[Civ. No. 8365. First Appellate District, Division Two.—May 15, 1933.]

FRANK M. GRITSCH, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

HELEN G. GRITSCH et al., Respondents, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

776

B. P. Gibbs, Orla St. Clair and Harry C. Lucas for Appellant.

Ford & Johnson, Fletcher A. Cutler and Leonard B. Fowler for Respondents.

NOURSE, P. J.—These two actions were tried together before a jury, which returned a verdict in each case for the plaintiffs. The defendant has appealed on typewritten transcripts and both appeals are presented on the same set of briefs.

The plaintiffs were passengers on a stage operated by the defendant on the main highway designated as El Camino Real running through the city of San Mateo. Both plaintiffs were injured when the stage upon which they were riding was struck by a Buick automobile driven by Milton Hamilton at the intersection of El Camino Real with El Cerito Avenue. The stage was struck on the left side near the middle, the impact causing damages to the steering apparatus of the stage which in turn caused the driver of the stage to lose control so that the stage went up on the right-hand curb across the parkway and came to a stop against a dwelling. Throughout its course through the city of San Mateo and for many miles on each side thereof El Camino Real was designated and marked as a through high-

way or boulevard and was at the time of the collision the only such through highway or boulevard leading from San Francisco south through the peninsula. The evidence introduced by plaintiffs, as well as that offered by defendant, showed that Hamilton failed to stop before entering the boulevard, that he entered the intersection while driving at a speed of thirty miles an hour and crashed into the side of the stage.

On this appeal the appellant attacks the ruling of the trial court permitting the plaintiffs to have a jury, the defendant insisting that a jury was waived because of plaintiffs' failure to deposit jury fees within the time prescribed by law. The evidence relating to the cause of the accident is reviewed at length and the defendant argues that from this evidence it must be ruled as matter of law that there was no competent evidence of negligence on the part of the defendant which was the proximate cause of the collision. Numerous instructions requested by the plaintiffs are attacked by the defendant, among which are those relating to the statutory limitations on the speed of the stage at the point of intersection and those concerning the *res ipsa loquitur* doctrine. If any one of these grounds be good a reversal of the judgment must follow and as the questions relating to the instructions present matters which are of a frequent occurrence in trials of this nature we will confine our opinion to a discussion of those instructions.

Instruction number 35, given at the request of the plaintiffs, quotes section 113, subdivision (a), of the California Vehicle Act, requiring that the operator of a motor vehicle drive the same at a careful and prudent speed. This was followed by a quotation of subdivision (b) of that section which made it lawful for the driver of such a vehicle to drive the same at a speed not exceeding "fifteen (15) miles an hour in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection."

This was followed by instruction number 36, also given at the request of plaintiffs, which read, "You are instructed that the ordinance of the City of San Mateo which required the operator of the Buick automobile to stop before entering El Camino Real did not give the operator of the stage the right to traverse said intersection in excess of the speed allowed by the California Vehicle Act, if you so find. On the contrary, if you believe, from the evidence, that the stage traversed said intersection in excess of the speed allowed by said California Vehicle Act, this constitutes *prima facie* evidence of negligence on the part of defendant Pickwick Stages System, a corporation."

Instruction number 44, given at the request of plaintiffs, reads, "I charge you that the violation, if any, of the provisions of the 'California Vehicle Act' regulating the operation of motor vehicles, and read to you in these instructions, constitutes *prima facie* evidence of negligence."

The effect of these instructions was to create in the minds of the jury the impression that the defendant was guilty of negligence if the driver of the stage operated his vehicle upon a through public highway or boulevard at a speed in excess of fifteen miles an hour while crossing any intersection of such boulevard or if the driver thereof violated any other provision of the California Vehicle Act.

These instructions were erroneous and as such prejudicial to this defendant. It should be noted that, just preceding the instruction under consideration, instruction number 33 was given, which reads in part as follows: "You are instructed that it was the duty of the defendant in operating its automobile along the public highway at the time and place in question, to anticipate the presence of and look for other automobiles crossing said public highway." The accident occurred on February 14, 1930. The effective provisions of the California Vehicle Act (Deering's Gen. Laws 1931, Act No. 5128) therein define a *highway* or *public highway* (sec. 21) as every highway dedicated to the public or intended or used by or for the general public. Section 22½ reads as follows: "*Through highway or boulevard.* (a) Every highway designated by ordinance enacted by local authorities at the entrance to which vehicles are required to stop before entering or crossing such through highway when there shall be in place upon the highway intersecting

any said through highway at or near the boundary line of such through highway appropriate stop signs so located as to be plainly visible at all times to the driver of an approaching vehicle.

"(b) Every public highway under the jurisdiction of the department of public works shall be a through highway, and all vehicles shall stop before entering or crossing such through highway when there shall be in place upon each and every public highway intersecting such through highway at or near the boundary line of such through highway appropriate stop signs so placed by or under the authority of the department of public works, and so located as to be plainly visible at all times to the operator of an approaching vehicle."

Section 113 of the act as amended (Deering's Gen. Laws, 1925–1927, p. 1533) reads (subd. a): "Any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, · surface and width of the highway, and no person shall drive any vehicle upon a public highway at such speed as to endanger the life, limb or property of any person."

In *Lindenbaum* v. *Barbour*, 213 Cal. 277 [2 Pac. (2d) 161, 164], our Supreme Court had occasion to consider a local ordinance in establishing a boulevard and providing for the erection of stop-signs at intersections, the local authority having been conferred by section 145 of the Vehicle Act. In that case the plaintiff was riding along Foothill Boulevard and was injured when the car in which she was riding collided with one operated by the defendant and which had entered the boulevard from an intersection without having stopped before entering in obedience to a stop-sign posted at the intersection. The particular point involved in the opinion was whether the right of way was to be determined by the general provisions of section 131 of the Vehicle Act or whether the fact that Foothill Boulevard was an established through highway or boulevard where stop-signs were maintained at intersecting streets gave the plaintiff the right of way over those vehicles entering the boulevard from these intersecting streets. The Supreme Court held that the general provisions of section 131 were controlled by the later specific provisions authorizing the local authorities to

create the through highways and boulevards. The cause of action accrued prior to the amendments of section 22½ of the California Vehicle Act. The same principle, however, is involved and in commenting on the purpose of the "boulevard plan" the Supreme Court said: "The patent purpose of designating certain streets as boulevards and requiring vehicles to stop before entering upon such boule-. vards is to facilitate travel along and upon such streets. Having in mind this purpose, we do not believe that it was the legislative intent to limit the scope of the power of the boards of supervisors to a bare right to designate certain streets as boulevards and to require vehicles to stop before entering thereon. The power to require vehicles to stop before entering a designated street without the right to designate how long the vehicle shall stop before entering, or the right to designate that after stopping, the vehicles must enter the boulevard in such a manner as not to interfere with traffic along the boulevard, would be a futile power. If the driver of a vehicle could stop at a stop-signal and then immediately proceed into the intersection without regard to the traffic coming down the boulevard except that already in the intersection, the act of stopping would be an idle act, for those using the boulevard would be in no more advantageous position than if there were no stop-signs as they would have to be constantly yielding the right of way to drivers crossing the intersection. We are of the opinion, therefore, that the power to regulate the right of way at intersections of boulevards with streets properly posted with stop-signs is a necessary concomitant of the power to designate certain streets as boulevards and to require vehicles to stop before entering such boulevards, which power was intended to be reserved to boards of supervisors by section 145 of the California Vehicle Act, hereinbefore quoted."

Cases in other jurisdictions involving boulevards and "arterial highways" recognize the general principle that the purpose of creating these through highways is to facilitate traffic upon them and to that end the state may delay all traffic entering into such highways in order that those traveling upon the through highways may have a preferred right of way. (See *Dikel* v. *Mathers*, 213 Iowa, 76 [238 N. W. 615]; *Bell* v. *Pickett*, 178 Minn. 540 [227 N. W. 854]; *Overaa* v. *Tacoma Bus Co.*, 168 Wash. 392 [12 Pac. (2d)

415]; *Keir* v. *Trager,* 134 Kan. 505 [7 Pac. (2d) 49, 81 A. L. R. 181].

From the Keir case we quote the following language, which is particularly applicable to the case here: "The appellee was acting wholly within her rights in assuming that the appellants would stop before entering the highway, and she cannot be charged with negligence in acting upon such assumption. She can only be charged with negligence under such circumstances from the time that she had knowledge that the appellants intended to disobey the stop sign and enter upon the highway. After she had such knowledge, she was bound to use the care of an ordinary, prudent person."

Here the uncontradicted evidence is that the Hamilton car approached the boulevard at a rate of speed in excess of thirty miles per hour and that without stopping and without any slackening of its speed it continued into the boulevard and struck the stage which was already in the intersection. That the stage had the right of way through the intersection and that the driver thereof had the right to assume that the Hamilton car would obey the law and stop before entering the boulevard, are matters which are not open to controversy. Thus the true measure of the statutory duty of the driver of the stage is that found in section 113 of the act. To quote: "drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway. . . . " He was not controlled by the provisions of subdivision (b) of that section which fixes a limit of "fifteen miles an hour in traversing an intersection of highways. . . . " The provisions of the latter subdivision relate to public highways as distinguished from "through highways" or boulevards, and, having been enacted prior to the amendments providing for through highways and boulevards, must be deemed to be controlled by the latter provisions. Otherwise, as pointed out in the Lindenbaum case, those provisions would be without purpose. ■ We conclude, therefore, that any person driving a vehicle on an established through highway or boulevard which is appropriately marked with stop-signs at intersections is not necessarily required to reduce his speed at those intersections to fifteen miles an hour under the provisions of subdivision (b) of section 113, but that his rate of

speed (unless governed by local regulations) is controlled by subdivision (a) of that section—that which is "not greater than is reasonable and proper". Thus when one who is driving on such a highway is involved in a collision at an intersection and the question of his negligence relates to the rate of speed at which he was driving, the jury should be properly instructed to determine whether such rate of speed was greater than was reasonable and proper under the circumstances, and also whether the speed maintained was a proximate cause of the accident.

If the question whether the rate of speed alone constituted negligence is a question of fact to be determined by the jury, then manifestly the trial court erred in instructing the jury that the statute expressly limited the speed of the stage to fifteen miles an hour at this intersection. It likewise erred in instruction number 33, which in effect advised the jury that it was the duty of the driver of the stage to anticipate that other automobiles would enter the boulevard in violation of law and that the driver did not have the right of way at that point. It is the rule of all the authorities that one operating a vehicle on the public highway may assume that another will proceed in accordance with the law, and that he is not to be charged with negligence by reason of that assumption unless he continues on *after* he has knowledge that the other is not acting within the law. This error was emphasized by instruction 36, which expressly advised the jury that the provisions of the San Mateo ordinance creating the boulevard and requiring all automobiles to stop before entering it, did not give the operator of the stage the right to traverse the intersection "in excess of the speed allowed by the California Vehicle Act". Having emphasized the fifteen mile an hour limitation, the jury could not help but draw the conclusion from these instructions that if the operator of the stage crossed the intersection in excess of that speed he was guilty of negligence as a matter of law.

At the request of the plaintiffs the trial court gave the following instruction applying the *res ipsa loquitur* doctrine: "The occurrence of the accident raises a *presumption* of negligence which such defendant is called upon to rebut or overcome by showing, if it can, that the injury was sustained without any negligence on its part or that

plaintiffs themselves were guilty of contributory negligence.''

The instruction is technically wrong for two reasons—it tells the jury that under this doctrine a presumption of negligence arises and that the burden of proof thereupon shifts to the defendant. We have frequently had occasion to point out the error in the use of the word ''presumption'' rather than the word ''inference'' in an instruction applying the *res ipsa loquitur* doctrine. This matter was discussed at some length in *Hilson* v. *Pacific Gas & Electric Co., ante,* p. 427 [21 Pac. (2d) 662], where *Dowd* v. *Atlas T. & A. Service Co.,* 187 Cal. 523, 531 [202 Pac. 870]; *Albert* v. *McKay & Co.,* 53 Cal. App. 325, 329 [200 Pac. 83], and *Crooks* v. *White,* 107 Cal. App. 304, 310 [290 Pac. 497, 500], are cited.

In *Crooks* v. *White, supra,* we said: ''The inaccurate use by courts of the word 'presumption', when the word 'inference' was intended, has led to some confusion. Furthermore, these words have been frequently used by the courts interchangeably.'' (See *Smith* v. *O'Donnell,* 215 Cal. 714 [12 Pac. (2d) 933]; *St. Clair* v. *McAlister,* 216 Cal. 95 [13 Pac. (2d) 924, 925].) We do not, however, find any case which has discussed this matter from an analytical standpoint and has held that the use of the word ''presumption'' is correct.

■ However, we are compelled to reverse the judgment, not because of the error in the wording of the instruction, but because in our view the *res ipsa loquitur* doctrine was not applicable to the facts of this case.

The essentials of the doctrine of *res ipsa loquitur,* or ''the thing speaks for itself'', are that the instrumentality causing the injury must be in the *exclusive management or control* of the defendant; that the circumstances attending the accident must be such as to carry a *strong probability* of negligence on the part of the defendant and that the accident would not have happened if the defendant had exercised proper care in the management of the instrumentality; *and that the actual cause of the accident must be otherwise unknown.* (45 Cor. Jur. 1197–1211.) Thus it has been said that the doctrine is applicable only when the nature of the accident itself not only supports the inference of defendant's negligence but excludes all others.

(*Scellars* v. *Universal Service Everywhere,* 68 Cal. App. 252 [228 Pac. 879]; *Carlsen* v. *Diehl,* 57 Cal. App. 731 [208 Pac. 150]; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206–208 [263 Pac. 518, 58 A. L. R. 129]; 19 Cal. Jur. 707, 710, 711.)

Originally the doctrine was applicable only in cases against common carriers. The underlying principle of the doctrine was that a passenger who was injured while riding upon a common carrier might not be able to allege or prove the precise act of negligence causing the injury, but that, because of the exclusive management and control of the instrumentality, the common carrier was in a better position to explain or designate the circumstances attending the accident. Hence it was said that when the instrumentality causing the injury was in the exclusive management and control of the defendant and the circumstances were such as to carry a strong probability of negligence on his part, these circumstances were such as would permit the jury to draw an inference of negligence within the meaning of section 1958 of the Code of Civil Procedure.

It will be recalled that from plaintiff's evidence it was shown that the operator of the Buick car failed to stop at the arterial intersection and that his car struck the stage in the middle of the intersection while going at a speed far in excess of that permitted by law. To say that under these circumstances the jury could not have drawn the inference that the operator of the Buick was negligent and that his negligence, independent of any negligence of the stage driver, was the proximate cause of the collision, would be to disregard plain common sense. Bearing in mind that the operator of the Buick was not joined as a party defendant in this case, but that the negligence of the stage alone was charged as the sole proximate cause of the accident we must conclude that the respondents elected to confine their charge of negligence to the one instrumentality and to thus limit the application of the *res ipsa loquitur* doctrine to the operator of that instrumentality. Where this is done, and upon plaintiffs' own case it appears that another independent instrumentality was involved in the collision and that it is reasonable to infer from the evidence adduced that the operator of that instrumentality was alone guilty of negligence, the primary principle of the doctrine is lacking because it is just as feasible for the plaintiffs to prove the negligence of

the operator of the second car as it is for the defendant to explain it.

Herein lies the distinction between the present case and *St. Clair* v. *McAlister, supra.* The latter case was a suit by a passenger on a stage against the owners of the stage and the operator of a second car which collided with the stage in an ordinary street intersection. In the presentation of her case against *both* defendants the plaintiff showed the circumstances of the collision and endeavored to prove negligence on the part of both. The Supreme Court held that in thus *"charging concurrent negligence"* plaintiff was bound to prove the particular acts of negligence charged to McAlister (operator of the second car) without the aid of the doctrine, but that: "By producing such proof it should not be held that she waived or forfeited her right to invoke the doctrine as to the defendant's carrying her as a passenger." ■ But where, as here, the plaintiff sues the carrier alone and then proves an independent act of negligence for which the party charged was not responsible, her case is nowise different from a supposititious case where some malefactor might have maliciously wrecked the stage in the course of its progress along the highway. In other words, when plaintiffs' proof shows the *actual* cause of the collision which is other than negligence of the party sought to be charged, there is no room for an inference that he was negligent under this doctrine. (*Carlsen* v. *Diehl*, 57 Cal. App. 731, 737 [208 Pac. 150] ; 29 Cyc. 624; *Lejeune* v. *General Petroleum Corp.*, 128 Cal. App. 404 [18 Pac. (2d) 429].)

The judgments are reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 14, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 13, 1933.