14252

CRAWFORD v. ATLANTIC COAST LINE R. CO.

(184 S. E., 569)

*Mr. F. L. Wilcox,* for appellant.

*Messrs. McEachern & Townsend,* for respondent,

March 12, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the plaintiff to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. After the evidence in the cause had been closed, the defendant moved for the direction of a verdict, first, because no reasonable inference could have been drawn from all the testimony, but that the defendant was guity of no negligence constituting a proximate cause of the injury; and, second, because no reasonable inference could have been drawn from all the testimony, but that plaintiff's own negligence constituted the proximate cause of the injury, without which such injury would not have occurred.

The appeal here is upon exceptions to the order of the trial Judge overruling the motion. The vital question to be decided then is: Does the record contain a scintilla of evidence which would entitle the plaintiff to have the issues submitted to the determination of the jury?

The trial resulted in a verdict for the plaintiff.

The issues involved in this appeal makes a brief review of the testimony necessary for an understanding of the case, which under the settled rule must be considered in the light most favorable to the plaintiff.

The testimony on behalf of the plaintiff tends to show that on or about November 19, 1934, about 11 o'clock in the morning, she was walking along the west side of North Dargan Street in the City of Florence, which street runs north and south. She was on the right-hand side of this street proceeding southward. Her way lay across the railroad crossing made by the defendant's railroad with North Dargan Street. The railroad runs east and west. The defendant's freight depot is located on the west side of North Dargan Street.

The Dargan street crossing is paved for vehicular traffic, but not for pedestrians, who use an unpaved walkway paralleling the paved way. Five of the defendant's tracks —main line, house track, Y track, and others—cross Dar-

gan street at this point. The walkway used by pedestrians is made up of dirt and clinkers. One of the important points in the case is whether or not the area between the rails of these several tracks was filled in so as to prevent any unusual inequality in its surface with reference to the rails. One of the charges is that the rails projected 3 or 4 inches above the walkway.

As the plaintiff entered upon the crossing, according to her statement she noticed an engine, about 15 feet distant from her, and between her and the freight depot, which she said was steamed up, puffing, and apparently on the verge of moving, and with a flagman out in front of it, who was ahead of her. She says that she stopped, but that the flagman waved to her to proceed, and from his method and manner of waiving she understood his gesture to indicate that she must hurry on across. That she did not recall his having anything in his hand; that he simply motioned with his hand. In hurrying across, she stumbled on a guard rail, and fell to the ground, in consequence of which she suffered a severe bruise and cut to her left leg, immediately below the kneecap, which seriously affected the knee cap itself, and confined her to her bed for a month, and necessitated medical treatment. That this guard rail is alongside of the third rail north of the freight depot. The guard rail parallels the third rail referred to, is only an inch or two distant from it, and extends across the walkway used by pedestrians. The testimony for the plaintiff further tends to show that the guard rail is 3 or 4 inches above the surface of the walkway.

The acts of negligence alleged in the complaint against the defendants are: (a) In failing to guard or protect its rails so as to secure an easy passage across its road; (b) in failing to maintain the crossing in a safe condition for use by the plaintiff; (c) in failing to inspect the crossing so as to maintain it in a safe condition; (d) in steaming up its engine and motioning violently to plaintiff to hasten across

its tracks; and (e) in failing to inform plaintiff adequately of the movement of its engine upon a dangerous crossing.

The testimony for the plaintiff tends to show that the engine in question was shifting cars across the intersection. At the time of the accident, the engine, with its attached tender or tank, was stationary between the walkway in question and the freight depot; that it was stationary only momentarily which a switch was being thrown on the Y track by the yard conductor.

The flagman testified that the engine and tender had just passed over the crossing, and that he "got off the engine, passing Dargan Street, to flag it, to take the crossing to protect the public"; and that at that time it was headed west, and stopped with the tender making a clearance of about 15 feet to the west of the walkway. As soon as the switch was thrown, the engine was to return over the crossing and enter the Y. The train crew consisted of the flagman, the yard conductor, who was acting as switchman, a fireman, and the engineer, all of whom, with the exception of the fireman, testified. None of them saw the plaintiff until she was getting up from the ground, and in the act of dusting her clothing. The flagman denied that he saw her before she fell, and denied that he had signaled her to cross the track in front of the engine.

The flagman stated that when he jumped off the tender to flag the crossing he stood on the south side of the railroad track, on the west side of the street, and very close to the walkway; that when he saw the plaintiff she was "on her all-fours—on her hands and knees"; that he asked her if she was hurt, and then "I made for the engine, for I thought the engineer might take the back signal, in order to take the straight air off and keep him from moving if he should take the signal from the rear." The engineer, according to his own testimony, had already received the signal from the yard conductor at the switch to back over the crossing, and was awaiting a signal from the flagman before

proceeding over the crossing. Before receiving the signal from the flagman, he heard the fireman holler, "Hold to!" and realizing that something was wrong, he looked out of both windows of his cab in turn, and finally saw the plaintiff getting up from the ground.

The witnesses for the defendant estimated the elevation of the guard rail above the level of the ground to be about 2¼ inches. The testimony of the yard foreman was to the effect that he inspected the crossing every Saturday and that he would level it and clean out the guard rails, and that unless the guard rails were cleaned every Saturday the cars would eventually turn over. It is inferred that the space between the guard rails and the rails would fill up and cause the cars to run off the track. This witness stated that the walkway would be safer for pedestrains if it were paved like the crossing at Evans street in the city of Florence.

It is not disputed that the portion of the crossing used for vehicular traffic is paved, and that the rails do not project above this pavement, but are level with it.

The flagman on cross-examination stated that any one using the unpaved walkway could trip over the guard rail; and, in answer to the question, "You could stumble very easily unless you were paying direct attention, and even if you were paying attention you could do it?" replied, "You could do it."

The narration of the facts and circumstances under which this accident occurred has been given in more lengthy detail than was intended. We are satisfied that more than one reasonable inference may be drawn from the evidence, both as to the negligence of the defendant, and as to the contributory negligence of the plaintiff.

The trial Judge, in the course of a very clear and comprehensive charge, read to the jury Section 8433 of the Code of 1932, which is as follows: "A railroad corporation whose road is crossed by a highway or other way within the corporate limits of any city, town or village, on a levy

therewith shall, at its own expense, so guard or protect its rails by plank, timber or otherwise as to secure a safe and easy passage across its road; and if, in the opinion of the proper municipal authorities thereof, any subsequent alteration of the highway or other way, or any additional safeguards, are required at the crossing, they may order the corporation to establish the same."

And the trial Judge instructed the jury that the action was based upon negligence. He further charged that the standard of care would be that of a person of ordinary prudence and caution under the conditions and circumstances that existed in the case.

The common law gives a right of action to every one sustaining injuries caused proximately by the negligence of another. The case at bar seems to be based both upon the common law and upon the breach of a statutory duty. Negligence is the breach of a legal duty, and it is immaterial whether the duty is one imposed by the rule of the common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. In either case, the failure to perform the duty constitutes negligence, and renders the party liable for injuries resulting from it. The only difference is that in the one case the measure of legal duty is to be determined upon common-law principles, while in the other the statute fixes it, so that the violation of the statute is negligence *per se*. All that the statute does is to establish a fixed standard by which the fact of negligence may be determined. The gist of the action is still negligence, or the nonperformance of a legal duty, to the person injured. *Osborne v. McMasters,* 40 Minn., 103, 41 N. W., 543, 12 Am. St. Rep., 698.

On the other hand, if the South Carolina statute is a mere affirmation of the common-law duty of the defendant with respect to affording a safe and easy passage across its tracks, the standard of care continues to

be the conduct of a reasonably prudent person under like circumstances.

It is contended by the appellant that there is no evidence tending to show any defective condition of the railroad crossing unless the failure to pave the crossing between the rails, or permitting the rails on the walkway to be higher than the general levy of the walkway can be considered negligence; that no witness testified that it was negligence; and, further, that there was no testimony that any one else had ever stumbled or fallen on account of the rails in question. The trial Judge charged the jury that the duty rested upon the defendant to maintain the tracks at this intersection in a safe condition, that is, in a condition which would be safe for the public to use, and that its failure to do that would constitute negligence; and that if such lack of due care on the part of the railroad company were shown by the greater weight of the evidence to be the proximate cause of the injury, the railroad company would be liable in damages to the person injured. In the monographic note following the case of *Gibson v. Delaware, etc., Canal Co.,* reported in 36 Am. St. Rep., 802, the rule is declared that when the Act complained of was such as that, in view of all the circumstances it might not improbably cause damage of some kind, the doer of the act cannot shelter himself under the defense that the actual consequence was one that rarely follows from that particular act.

We think the causal connection between the negligence charged against the defendant and the injury alleged to have been suffered by the plaintiff is reasonably inferable from the evidence; and, this being true, there can be no dispute as to the proposition that the question of causal connection between the wrongful act and the injury complained of is for the jury under proper instructions from the Court. It would not have been proper for the trial Court under the evidence to have directed a ver-

dict upon the ground that the defendant was guilty of no negligence constituting the proximate cause of the injury.

■ One of the remarkable features of the testimony is that in the restricted area of this intersection, and immediately upon the scene of the accident, were four members of the defendant's train crew, and yet not one of them saw the plaintiff at all, according to their testimony, until after she had fallen on the track upon which the locomotive engine stood. North Dargan street is one of the most traveled streets in the City of Florence. Pedestrians are constantly walking across this intersection, and yet we have the statement of the flagman, who was on the ground for the purpose of protecting the public and flagging the crossing, that he did not see the plaintiff until after she fell, although he was standing within a very short distance of her, with his view unobstructed. The jury, under the evidence, was at liberty to infer that the flagman did see her, and that he signaled to her to hurry across in front of the defendant's engine, which, according to all of the testimony, was on the verge of moving; and might also reasonably have inferred that in responding to his signal she would not have fallen if the walkway had been made safe and easy by a proper guarding and protection of the rails. In other words, that the plaintiff would not have suffered the injury alleged if there had not been a breach by the defendant of its statutory and common-law duty.

■ If the risk is so great and immediately threatening that a person of ordinary prudence, under all the circumstances, would not take it, contributory negligence is established. If the risk is not so great and immediately threatening but that a person of ordinary prudence, under all the circumstances, would take it, contributory negligence is not established.

■ The question of negligence and of proximate cause was for the jury's determination under the testimony.

The defendant relies for its defense of contributory negligence on the fact that the plaintiff knew the crossing; was thoroughly familiar with it, and crossed it frequently, and therefore was negligent in failing to exercise ordinary care. The testimony tends to show that plaintiff's attention was sharply distracted at the time she fell, by the signaling of the flagman, and the apparent imminent moving of the engine. The defendant cites several cases in support of its defense of contributory negligence, which we think are not in point. *McLean v. Atlantic Coast Line R. Co.,* 81 S. C., 100, 61 S. E., 900, 1071, 18 L. R. A. (N. S.), 763, 128 Am. St. Rep., 892, is a case where a railway passenger, for whom a coach was provided, went on the top of a caboose, and was injured, thus leaving a place of safety and placing himself in a position of danger unnecessarily. The Court held that he was guilty of contributory negligence.

In the case at bar, the plaintiff had a right to use the walkway in crossing the intersection, using ordinary care. It cannot be said as a matter of law that she was guilty of contributory negligence, if the flagman of the defendant, whose duty it was to warn her, waved her on across. Whether he did or not was a question for the jury.

Upon analogous ground, the case of *Bouchillon v. Charleston & W. C. R. Co.,* 90 S. C., 42, 72 S. E., 634, Ann. Cas., 1913-D, 1, cited by the defendant, is not applicable to the facts of this case. Nor is *Davis v. Payne, Director General of Railroads,* 120 S. C., 473, 113 S. E., 325.

The evidence is susceptible of more than one reasonable inference on the issues of negligence and contributory negligence, and in our opinion the trial Judge committed no error in submitting these issues to the jury.

The exceptions are overruled.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.