69 So.2d 414

WADDELL v. CRESCENT MOTORS, Inc.

7 Div. 197.

Supreme Court of Alabama.

Dec. 17, 1953.

Merrill, Merrill, Vardaman & Matthews, and Evans & Norred, all of Anniston, for appellant.

Knox, Jones, Woolf & Merrill, Anniston and Geo. W. Yancey, Birmingham, for appellee.

**STAKELY, Justice.**

This is a suit brought by C. L. Waddell (appellant) against Crescent Motors, Inc., a corporation (appellee). The plaintiff was a passenger on one of the defendant's busses at the time of the accident, which occurred on October 12, 1950. The complaint consists of five counts. The first two counts charged general negligence in that the defendant failed to carry the plaintiff safely. Counts three and four charged negligence of the defendant in failing to provide a reasonably safe place for plaintiff to alight from the defendant's bus. Count five charged negligence in that the plaintiff was not afforded a reasonable opportunity to alight from the defendant's bus. At the conclusion of the evidence the court gave the affirmative charge with hypothesis in favor of the defendant. There was a verdict and judgment for the defendant. This appeal is from that judgment and the action of the court in giving the affirmative charge with hypothesis for the defendant is the sole question involved in this appeal.

There are conflicts in the evidence but in considering the question presented we must state the facts most favorable to the plaintiff. On October 12, 1950, the plaintiff boarded one of the defendant's busses at 10th and Noble Streets in the City of Anniston, Alabama and paid the customary fare. After boarding the bus it traveled south on Noble Street in Anniston, Alabama, to a point where the plaintiff wanted to get off the bus. When the bus neared the point at which the plaintiff wished to get off, he gave a signal by pulling a cord. It was late in the afternoon at dusk. The plaintiff was going to a point in South Anniston where I Street enters Noble Street. The route traveled by the bus on Noble Street was one of the regular runs operated by the defendant under its franchise from the City of Anniston as a carrier of passengers.

I Street enters Noble Street on the east side, Noble Street running north and south. However I Street does not cross Noble Street. On the west side of Noble Street at that point is a road shoulder, varying in width according to the witnesses from eight to fifteen feet in bad condition because covered with a lot of loose rocks, then a ditch with a growth of weeds and grass in and around it and then a railroad track on an embankment up from the ditch. The railroad track runs parallel to Noble Street along the area involved.

From the place where I Street enters Noble Street visibility along Noble Street is clear for a distance between a quarter and a half mile in both directions. At the time and place of the accident, the paved portion of Noble Street was 21 feet, which means that there was 10.5 feet of pavement on each side of the center line of Noble Street. The bus of defendant was 8 feet wide and 25 feet long. At the time of the accident the plaintiff was thirty-seven years old and was working at the Republic Steel Plant in Alabama City. He lived on Quintard Avenue in Anniston about two blocks east of where I Street enters Noble Street. He was a fairly regular rider of the bus and familiar with the physical surroundings of the place where he was to alight from the bus.

At the time the bus stopped it did not pull off the paved portion of the highway but stopped with all four wheels on the pavement. When the bus stopped to allow the plaintiff to get off, the door of the bus was opened and the plaintiff started to alight. As the plaintiff was in the act of alighting from the defendant's bus on the right side of the bus, a car hit the plaintiff. The plaintiff had never completely alighted from the bus at the time he was hit. According to the plaintiff, he stepped down on the step of the bus with his left foot and about the time his right foot hit the ground, the car hit him. The bus stop-

ped in its right lane for traffic and the left wheels of the bus were two feet from the center of the road. The bus was equipped with a side mirror and a rear view mirror. The driver of the bus saw the car which struck the plaintiff coming toward the bus some 100 or 200 feet behind the bus at the time the plaintiff was getting off of the bus. There was also a car approaching from the front of the bus.

The plaintiff was grievously injured in the accident. He was hit by a car which ran by on the right side of the bus. The car hit a telephone pole off to the right rear of the bus about 8 or 9 feet off the road and went on down the ditch between Noble Street and the railroad, a distance of about 60 to 70 feet in front of the bus. The car was driven by a boy named Hamilton, who was not at the time and never has been an employee of or connected with the defendant. The brakes of his car were in fair condition. Hamilton is not a party to this suit.

At the time of the accident the outside and inside lights of the bus were on and the stop lights on the bus were in good working condition. The bus did not move from the time the plaintiff was hit until the officers arrived on the scene.

■ It is well established that a carrier is not an insurer of the safety of its passengers. In Mosley v. Teche Lines, Inc., 232 Ala. 110, 166 So. 800, 801, it is said:

"The carrier is not an insurer of the safety of passengers. The burden of proof is on plaintiff to show negligence; that is to say, some act or omission disclosing a want of that degree of care above stated, or circumstances from which such want of care may be reasonably inferred."

■ It is further true that a presumption of negligence does not arise merely because a passenger for hire on a carrier's vehicle is injured. This rule is stated in Montgomery City Lines, Inc. v. Jones, 246 Ala. 291, 20 So.2d 599, 603, as follows:

"The carrier is not an insurer of the safety of its passengers. The fact

that a person may be injured while a passenger in or on the bus does not, without other evidence, within and of itself show negligence. The burden is upon the plaintiff to prove not only some specific negligence, but that such negligence was the direct, proximate and efficient cause of the injury. He must prove the causal connection between the negligence complained of and the injury. Britt v. Daniel, 230 Ala. 79, 159 So. 684."

■ Tendencies of the evidence most favorable to the plaintiff show that when the bus stopped to allow the plaintiff to alight from the bus all of its four wheels were on the pavement. The appellant cites the case of Chambers v. Cox, 222 Ala. 1, 130 So. 416, 419. In the opinion in that case it was said that, "Plaintiff's evidence tended to show defendant's car was parked contrary to the statute. Gen. Acts 1927, pp. 348, 375, § 70." However, the legislature has seen fit to change the statute referred to in that case. Section 70, General Acts of 1927 came forward into the 1940 Code as § 25, Title 36. In the General Acts of 1939, p. 1033, Section 1, the law was amended so as expressly to exempt busses operating as the one in this case. The case of Chambers v. Cox, supra, therefore has no application in the case at bar. The legislative intent as evidenced by the amendment to § 25, Title 36, Code of 1940 (Pocket Part), is pertinent here. The amendment provides that the statute relating to parking a vehicle upon the paved portion of the highway does not apply to any vehicle engaged in the business of carrying passengers for hire and operating over a fixed route and between regular termini under municipal authority while stopped on the right-hand side of the highway to pick up or discharge passengers provided a clear view of such vehicle may be obtained from a distance of 300 feet in each direction upon the highway. We must conclude that there was no violation of this statute merely because the bus was stopped with all four wheels on the highway, as the bus was stopped on the right half of the paved portion of the highway at the time of the accident.

How then can it be said that there was any evidence in the case tending to show that the driver of the bus was guilty of negligence? True he knew that there was a car approaching from the rear but there was nothing in the action of this car which indicated that that car would violate the law. The law required that vehicles proceeding in the same direction should pass to the left of the bus at the time and on the occasion of the accident involved in this case. § 12, Title 36, Code of 1940. The law required all cars and vehicles on the highway to be equipped with effective brakes. § 35, Title 36, Code of 1940. The driver of the bus had the right to assume, unless apprised to the contrary, that no vehicle following the bus proceeding in the same direction would pass or attempt to pass the bus on the right side of the bus. In other words, the driver of the bus had a right to assume at the time and on the occasion of the accident involved in this case that the driver of the car following the bus would not attempt to pass the bus so as to drive the car completely off the paved portion of the highway and on to the shoulder and to the right of the bus. "Ordinarily the carrier is not liable for the independent wrongs of third persons which it could not reasonably anticipate or apprehend". 13 C.J.S., Carriers, § 696, p. 1303; L. Hammel Dry Goods Co. v. Hinton, 216 Ala. 127, 112 So. 638; Holman v. Brady, 241 Ala. 487, 3 So.2d 30.

It must be recalled that the pavement on Noble Street was 21 feet wide. This means that there were 10.5 feet of pavement on each side of the center line of the street. The bus of the defendant was 8 feet wide. The testimony in its most favorable light to the plaintiff shows that the left wheels of the bus were two feet to the right of the center line of the street. Accordingly the right-hand side of the bus (the side with the door where plaintiff was alighting), was about six inches from the right-hand edge of the pavement. There was a shoulder of road between the pavement and the ditch. While the testimony of various witnesses varied as to the width of the shoulder being from 8 to 15 feet, assuming that the shoulder was 15 feet wide,

the evidence was undisputed that the condition of the shoulder was bad and was very rocky. While a driver needed to be careful in driving on the shoulder, there is no evidence tending to show that the place where plaintiff alighted was unsafe for that purpose.

Able counsel on both sides have cited us to a number of cases which we have read with a great deal of care. From a factual standpoint the nearest case to the case at bar appears to be Hochberger v. G. R. Wood, Inc., 124 N.J.L. 518, 12 A.2d 689, 690. In that case the plaintiff was riding in the bus of the defendant. The pavement was 20 feet wide with an eight foot graveled shoulder. "The bus was stopped at Woodland Avenue with its right front wheel six inches to a foot off the concrete roadway on to the gravel shoulder." The plaintiff alighted and was immediately struck by an automobile entirely on the shoulder of the road to the right of the bus. The court granted the motion of nonsuit for the defendant. The Supreme Court of New Jersey in answer to the contention that the bus should have been driven out on the shoulder said:

"The shoulder is not designed nor constructed for general traffic uses but is rather for emergency uses such as parking of vehicles disabled or otherwise. The purpose of the Traffic Act was to insure safety in the use of our highways. To construe this section as is urged would more likely have the contrary effect. If heavy busses are required to leave the paved portion of the road and to travel across the shoulder to the edge thereof it is probable that the shoulders would generally be incapable of such use which in our view was not intended by the legislature. Had the bus gone to the extreme edge of the shoulder of the road in the instant case the plaintiff would have been obliged to alight in wild grass and shrubbery which was adjacent to the shoulder. We do not think the Traffic Act carries any such mandate."

But it is claimed that in the event the bus driver had no reason to believe that harm might overtake the plaintiff in connection with his alighting from the bus, that safety instructions of the defendant to its drivers required the driver to pull off the paved portion of the highway to discharge passengers where this was possible and safe for the passengers. This testimony was introduced over the objections of the defendant. It is argued that the violation of these instructions constitutes negligence per se or that the instructions with the other evidence makes a case for the jury. The answer to this contention is that the law at the time and on the occasion involved did not require the bus to pull off the paved portion of the road and there was no legal duty on it to do so. We quote from 13 C.J.S., Carriers, § 765, p. 1477, as follows:

"A rule of a carrier, adopted for the government of the conduct of passengers or of its employees in the operation of its trains, and which does not require more than the law requires of the carrier with respect to the matters covered by such rules, is admissible in evidence on the question of the carrier's negligence, provided such rule is shown to have been in existence at the time of the accident, and that the passenger had, or was chargeable with, notice thereof. However, it has been held that such a rule is incompetent in behalf of the carrier; and in some jurisdictions it has been held that a rule intended for the guidance of employees is not admissible to show either due care or negligence toward passengers. Where the rule requires more than the law requires, or where it requires the performance of acts which the law does not recognize as a duty devolving on the carrier, it is inadmissible. * * *"

It is true that the instructions of the defendant to its drivers were allowed in evidence by the court over the objections of the defendant, but this does not prevent the court from giving the affirmative charge for the defendant. As was said in Jacksonville Paper Co. v. Hartford Accident and Indemnity Company, Ala. Sup., 69 So.2d 411,[1] where a similar situation was presented, "The court in doing so is in effect excluding that evidence and reversing his ruling as to it."

Upon consideration the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.