HERGET, Judge.
This suit arises out of an accident that occurred at or near the northeast corner of the intersection of Evangeline and Beechwood Streets in the City of Baton Rouge, Louisiana. Evangeline Street runs generally east and west and Beech wood Street runs generally north and south. The suit was originally filed by Mr. Dewey Blanchard, individually and for the use and benefit of his minor daughter, Miss Jocelyn Marie Blanchard. Subsequent to the filing of the suit Miss Blanchard married and she was substituted as a party plaintiff in her own behalf by supplemental petition filed on November 17, 1959.
On February 21, 1956 Mrs. Jocelyn Marie Blanchard Bourgeois was injured after disembarking from a bus belonging to Baton Rouge Bus Company, Inc. at the northeast corner of Evangeline and Beechwood Streets when she was struck by a vehicle driven by Eddie Jackson, who, according to his testimony, when his brakes failed to hold drove his vehicle to the right of the bus rather than to the left to avoid striking an oncoming vehicle. The bus and the car driven by Jackson had been traveling west on Evangeline Street just prior to the bus stopping to take on or discharge passengers. Mrs. Bourgeois was attending high school at the time of the accident in question and had boarded the bus for transportation to her home. The accident occurred at about 4:30 p. m. on a clear, dry day.
The driver of the offending vehicle, Eddie Jackson, who was also a minor, and his mother, Janie Green, were made parties defendant originally but, by motion of Plaintiffs, Jackson and his mother were dismissed from the suit and same was tried against Baton Rouge Bus Company, Incorporated.
For written reasons assigned, the Trial Judge rendered judgment in favor of Plaintiffs and against Defendant for the damages sustained by Plaintiffs. From this judgment Defendant entered an appeal *234 to this Court and Plaintiffs answered the appeal.
The evidence reveals that Mrs. Bourgeois desiring to exit from the bus at the corner of Evangeline and Beechwood Streets sounded the bell signal for the motorman to stop at that corner. An uneventful stop was made and the doors of the bus were opened in order to permit passengers to disembark. Plaintiff, Mrs. Bourgeois, intended to leave the bus through what is known as the rear door located on the right side of the bus just back of the center. The evidence shows upon her reaching the steps to disembark one of the passengers in the bus informed her that she had left some of her school books. She returned to the seat where she had been sitting on the left side of the aisle of the bus, obtained her books, thanked the other passenger for reminding her of the fact and descended from the bus to the street. This portion of the evidence is corroborated by several of the witnesses who were occupants of the bus on this occasion.
Immediately following the accident photographs were made of the bus and the offending car prior to the time either had been moved from their positions after the happening of the accident. These exhibits reveal that the bus was parked near the north edge of Evangeline Street which is blacktopped and does not have a curb indicating the limits thereof, neither is there a paved pedestrian sidewalk running parallel with Evangeline Street along this section of said street. The Jackson car is shown in contact with a telephone post located at or near this corner of Evangeline and Beechwood Streets which the driver testified he struck in an effort to avoid striking Mrs. Bourgeois whom he had seen descend from the bus and begin to walk west along the shell or graveled shoulder adjacent to and parallel with Evangeline Street. The exhibits further reveal the width of Evangeline Street is such that there was ample room for vehicles to pass the bus on its south or left side when parked in the identical position that it was in when the accident occurred.
Bennie L. Case, who was the operator of the bus, testified upon receiving the signal to stop at the intersection there was no necessity for a sudden stop and he brought his bus to the point where he stopped in an unhurried manner; that he opened the doors for passengers to exit and that he saw the plaintiff, Mrs. Bourgeois, in his rear view mirror go to the back steps of the bus, starting down same when someone called to her that she had left her books and she returned to the opposite side of the center aisle where she had been sitting to retrieve them. The doors to the bus remained open during this interval. She then returned to the back door, descended from the bus to the street or shoulder and after she had taken about three or four steps west toward the front of the bus he saw for the first time the Jackson vehicle approaching from the rear and saw same veer to the right and there was nothing he could do to prevent the vehicle from striking her.
The next witness called, who testified on behalf of the Plaintiffs as to the happening of the accident, was Clarence “Jerry” Harrison who, at the time, was a friend of Mrs. Bourgeois, then Miss Blanchard. He had gone to the intersection for the purpose of meeting her when she got off of the bus. According to his testimony he was sitting on a motorbike located on a walkway which is at right angle to Evangeline Street leading into a home located at or near the northeast corner of the two streets in question. According to his testimony the bus was stopped and the plaintiff, Mrs. Bourgeois, was standing on the steps waiting for the doors to open when he saw the Jackson car approaching from the rear of the bus in such a manner he knew that it was going to strike her if she disembarked from the bus. He holloed at her to prevent her from emerging therefrom but she did not hear his warning. He did not actually see the car strike her. In a statement he gave dated March 13, 1957 — some three and a half years prior to the date he *235 testified in court on November 25, 1960, which statement was offered in evidence— he said that the bus had come to a stop, the doors opened and he saw Mrs. Bourgeois start down the steps, at which time he looked east and saw the Jackson vehicle approaching from the rear of the bus, saw it turn off the street before it got to the bus and come around the bus on the right side almost hitting him and he saw books flying in the air and the Jackson 'vehicle struck the telephone post.
Mirma James testified that she was a passenger in the bus and when plaintiff, Mrs. Bourgeois, started out of the bus after the bus had stopped and .the doors opened and when she had reached the steps of the bus to exit, she, Mirma, called to the Plaintiff that she had left her books; that Plaintiff returned, got her books from the opposite or left side of the bus, thanked her, returned to the door, descended to the ground and took two or three steps west prior to being struck by the Jackson car. She further testified the bus doors were closed after the departure of Mrs. Bourgeois from the bus and prior to the collision.
Stanford J. Ponson, likewise called by the Plaintiffs, testified that he was driving south on Beechwood Street; that he stopped at the stop sign simultaneously with the bus stopping; that he looked in both directions along Evangeline Street; that the back door of the bus was opened and he saw Plaintiff on the “ * * * bottom step, one of the steps, getting out of the bus, * * * ” at which time he saw the Jackson vehicle approximately 75 feet back of the bus angling to the right on Evangeline Street between the bus and the telephone pole located on the corner, veering in the direction of his car stopped on Beechwood and upon this observation he immediately “* * * shot across the street, across Evangeline Street.” As he crossed the street he heard the crash and in his rear view mirror observed this Plaintiff flying through the air and that she landed in the middle of Beechwood Street where his car had been previously stopped. When questioned further about his meaning as to the “approximately 75 feet” he referred to in speaking of the Jackson car, he said that he meant about 75 to a hundred feet from where he was stopped and that the Jackson car was between 35 and 50 feet behind the bus.
Clyde O. Albritton was called by Defendant. He testified that he was driving north on Beechwood Street and had stopped at the intersection of Evangeline Street in obedience to the stop sign. He related that the bus came to a stop on Evangeline Street at about the same time. His attention was directed toward the east by noise which he was of the opinion resulted from the attempt of the driver Eddie Jackson to reverse the gear of the car in an attempt to stop and could not do so and that the vehicle was weaving; that at the time of this observation the Jackson car was some 50 or 60 feet behind the bus; that the noise he heard which attracted his attention to the oncoming Jackson car occurred after the bus had stopped and after the bus had been stopped long enough for some passengers to have gotten on or off, though, because of his view being blocked, he was unable to relate whether such were the case. He did not see the Jackson car strike Mrs. Bourgeois but saw her body in the air and where she came to rest on the west side of Beechwood Street about %rds or J4ths across from the east side thereof.
Eddie Jackson, the driver of the vehicle which struck the Plaintiff, testified that he was following another car which was immediately behind the bus; that the preceding car passed the bus after the bus had stopped; that when he reached a point about 35 feet behind the bus he attempted to stop his car by applying the brakes; that he “ * * * didn’t have no brakes”; that he started to cut around the left side of the bus but he cortld not because of an oncoming trailer truck; that he then took to the neutral ground on the righthand side about 20 or 25 feet back of the bus; that he saw the Plaintiff step off of the bus and in an *236 effort to avoid striking her he veered further to his right, struck a mailbox and a “telegram pole” and the left door of his car flew open and struck the Plaintiff. None of the other witnesses who testified in the case observed either the car which Jackson said was preceding him or the oncoming trailer truck. He further testified upon the failure of his brakes to operate he cut the motor off in his car and that he threw it in gear to try to stop. He testified he was going at a speed of about 25 miles per hour immediately prior to attempting to stop and he then related that after the Plaintiff stepped off of the bus she started walking west toward the front thereof and to keep from striking her he hit the post and the door of his vehicle flew open and struck her. In relating the efforts made by him to bring his car to a stop when Jackson noted that his foot brake would not work, he testified he attempted to use the emergency brake but it would not hold, he then turned the ignition key off and put the car in gear (evidently meaning reverse gear) in an effort to stop.
Defendant then called as a witness to the occurrence of the accident Mary Wade, a passenger on the bus, who testified the bus came to a stop, that this Plaintiff went to the rear door to disembark; that upon being informed that she had left her books she returned to the seat she had occupied, got her books and then got off the bus. She estimated that it was “ * * * long enough for me to count one, two, three” after Airs. Bourgeois had gotten off the bus the doors to the bus had been closed and she heard the crash.
In his written reasons for judgment, the Trial Court concluded that the driver of the bus was negligent in failing to pull his bus off of the paved portion of Evangeline Street and stop on the shoulder for the purpose of discharging his passengers and in failing to observe the Jackson vehicle so as to give proper warning and protection to his passenger before disembarking her.
There is no city ordinance or statutory requirement that the driver of a bus drive off of the paved portion of Evangeline Street on to the shoulder of the road for the purpose of discharging or taking on passengers. In fact, from an observation of the shoulder as depicted in the exhibits, it is obvious that structurally the shoulder was not placed there for that purpose. There are apparent defects of raised and depressed areas in the shoulder at the point where the bus stopped and it is conceivable that the discharge of passengers on the shoulder could have resulted in their falling on the irregular surface and, furthermore, the use of the shoulder by busses of such heavy weight for this purpose would result in the destruction of the shoulder.
It was observed in the case of Hochberger v. G. R. Wood, Inc. et al., 124 N.J.L. 518, No. 8, 12 A.2d 689, at page 690, where the Court of Errors and Appeals of New Jersey denied the contention that a bus driver was negligent in stopping on the highway for the purpose of taking on or off persons contrary to the section of the statute prohibiting a vehicle from taking on or off persons other than at the curb or side of the road or highway:
“ * * * We do not construe this as to require a vehicle to leave the concrete and cross over the shoulder. The shoulder is not designed nor constructed for general traffic uses but is rather for emergency uses such as parking of vehicles disabled or otherwise. The purpose of the Traffic Act was to insure safety in the use of our highways. To construe this section as is urged would more likely have the contrary effect. If heavy busses are required to leave the paved portion of the road and to travel across the shoulders to the edge thereof it is probable that the shoulders would generally be incapable of such use which in our view was not intended by the legislature. Had the bus gone to the extreme edge of the shoulder of the road in the instant case the plaintiff would have been obliged to alight in wild *237 grass and shrubbery which was adjacent to the shoulder. We do not think the Traffic Act carries any such mandate.”
In that case the bus stopped on the highway, which was 20 feet wide and had an 8 foot graveled shoulder on the easterly side thereof to discharge a passenger, the front wheels of the bus being six inches to a foot off of the concrete roadway on to the graveled shoulder, the bus driver at that time opened the door and when the plaintiff alighted he turned to get his bag from the bus and then saw an automobile approaching from the rear entirely on the shoulder of the road to the right of the bus and before the passenger could get back into the bus he was struck by the passing vehicle.
In the cases of Locklear v. Southeastern Stages, Inc. et al. (Smoak v. Same), 193 S.C. 309, 8 S.E.2d 321, the Supreme Court of South Carolina held that where a bus stopped on a highway, assuming said stop was in violation of the statute prohibiting same, for the purpose of permitting passengers to enter the bus who were struck by a car which came from the rear of the bus, passed the bus on the right side on the shoulder and struck the prospective passengers, that the violation of the statute was a remote cause and that the negligence of the driver of the overtaking vehicle was the proximate cause of the injuries complained of in the suits. At page 325 of the opinion in 8 S.E.2d, the Court observed:
“Our decisions are all to the effect that liability exists for the natural and probable consequences of negligent acts or omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising. Johnston v. Atlantic Coast Line R. Co., 183 S.C. 126, 190 S.E. 459; Crawford v. Atlantic Coast Line R. Co. [179 S.C. 264, 184 S.E. 569], supra; Tobias v. Carolina Light & Power Co., 190 S.C. 181, 2 S.E.2d 686.
“We have held that when the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause. Carter v. Atlantic Coast Line R. Co., 109 S.C. 119, 95 S.E. 357, 11 A.L.R. 1411; Martin v. Southern Ry., 77 S.C. 370, 58 S.E. 3, 122 Am.St.Rep. 574; Miller v. Atlantic Coast Line R. Co., 140 S.C. 123, 138 S.E. 675.”
In the case of Waddell v. Crescent Motors, Inc., 260 Ala. 124, 69 So.2d 414, where a bus stopped on a paved street 21 feet wide which had shoulders varying from 8 to 18 feet in width for the purpose of discharging a passenger, the Court concluded that the bus company was not guilty of any negligence even though the bus driver knew that there was a car approaching from the rear, which vehicle veered to the right of the bus on to the shoulder of the road and struck a passenger being discharged from the bus about the time his right foot hit the ground. It was observed that a carrier is not an insurer of the safety of its passengers but is liable only for acts of negligence and the driver of the bus was guilty of no negligence, even though he had seen the car approaching from the rear, as he had a right to assume at the time he stopped on the highway that the following car would not attempt to pass the bus on the right side on the shoulder of the road.
In the case of Crawley v. City of Monroe et al., 26 So.2d 493, the Court of Ap *238 peal of Louisiana, Second Circuit, held that a trolley bus operator was not guilty of negligence in stopping his bus in the middle of a block to permit a passenger to alight in front of his home, but the driver of the bus was'held guilty of negligence in failing to exercise the forethought and care required of him in not anticipating that a bicyclist whom he had just passed would pass the bus on the right and strike plaintiff who was being discharged from the bus. Thus, the negligence of the driver was not attributed to his stopping in the middle of the block for the purpose of dis- ' charging his passenger but in his failure to reasonably anticipate that the bicyclist would endeavor to do just what he did and pass the bus on the right.
From the evidence in this case, we are of the opinion that the uneventful stop made by the bus driver for the purpose of discharging Plaintiff was made with no negligence inasmuch as there is no statute or ordinance prohibiting the bus from stopping on the paved portion of the street for the purpose of taking on or discharging passengers. Furthermore, the use of the shoulder of the street conceivably could be fraught with danger to the passengers from jolting while on the bus or falling after disembarking on the irregular surface and the use of the shoulder for such objective is contrary to the purpose for which same was designed and constructed.
We observe, especially giving consideration to the testimony of Mr. Ponson, Mr. Albritton, Mr. Case, Mirma James and Mary Wade, when the bus stopped and the doors opened for passengers to embark and disembark there was no basis for Mr. Case to anticipate that Plaintiff’s departure from the bus would be fraught with danger. In all probability, but for the delay occasioned by Mrs. Bourgeois returning to her seat to retrieve her forgotten books and thanking her informer after reaching the back steps she would have reached a point of safety after disembarking from the bus had she done so at that time and the bus more than likely would have within that time been put in motion and moved from its stopped position. Certainly, at that time, there was no basis for the bus driver to anticipate the subsequent erratic action of Jackson resulting in the injury to Plaintiff and his failure to do so was not negligence.
We next come to the question of whether or not the driver of the bus should have observed the approaching out of control vehicle of Jackson so as to timely warn Plaintiff of the danger or prevented her departure from the bus.
In the case of Gross v. Teche Lines, Inc. et al., 207 La. 354, 21 So.2d 378, at page 382, the Supreme Court of this State observed :
“It is well settled that the driver of a motor vehicle is not negligent in failing to anticipate that another car operator, who is lawfully and prudently driving, will suddenly disregard the traffic laws and become reckless when there is nothing in his conduct to indicate he will do so. Benton v. Griffith, La.App., 184 So. 371; Rohl v. United Elec. Rys. Co., 50 R.I. 478, 149 A. 375; Gritsch v. Pickwick Stage System, 131 Cal.App. 774, 22 P.2d 554. Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 2, Perm. Ed., § 919, page 60.
“ * * * A carrier of passengers is liable for the slightest negligence which contributes to an accident that causes injury to a passenger but it is not an insurer of the passenger’s safety against negligent acts of third parties and their palpable disregard of the law. The highest degree of care doctrine is not synonymous with a guarantee of the passenger’s safety against any possible injury. Until there is some indication, which would require a vigilant, competent, and experienced driver exercising the highest degree of care to observe the contemplated reckless and unlawful act of another, it is *239 not negligence on his part to fail to do so. To hold otherwise would require the operator of a passenger vehicle to foresee every unexpected and sudden contingency. To place such an obligation on him would require him to speculate with mere possibilities and pure conjecture. * * * ”
Though a common carrier must exercise the highest degree of care to protect its passengers from anticipated dangers, such anticipated dangers do not require that the driver foresee the possibility of the happening of any accident but only those that would result without the exercise of due care. A carrier is not made liable to a passenger merely by reason of the happening of an accident — it is not the insurer of the safety of the passenger — and especially when the injury to the passenger results from the negligence of another, the carrier is discharged from liability upon the showing of no negligence on its part proximately causing the injury.
In the case of Earl W. Baker & Co. et al. v. Lagaly, 10 Cir., 144 F.2d 344, 154 A.L.R. 1098, as found in the Syllabus on page 1098, held:
“A jury is warranted in finding negligence on the part of the driver of a school bus toward a child whom he had permitted to leave the bus and who, on passing around its front across the highway toward its home, was struck by an overtaking truck, and that such negligence was the proximate cause of the child’s death, where the driver of the bus, on turning into the highway at an intersection, saw the truck approaching when a quarter to half a mile away, knew that the highway was traveled generally, knew or should have known that the child would immediately start across it in order to reach his home, and knew or should have known that the truck was following the bus, but permitted the child to alight without making any effort to ascertain the proximity of the truck and without giving the child any warning.”
Thus the negligence of the driver of the school bus was attributed to his permitting a child of tender age to cross the street in front of his bus at a time when he knew or should have known of the approach of a passing vehicle.
Under the evidence in this case, if the motorman had observed the approaching Jackson car a block to the rear of his bus there was nothing unusual about the driving of Jackson at that time which would have served to forewarn Case that there was any reason to anticipate that the driver would endanger passengers discharged by him at the stopping place. His testimony was to the effect that the first time he observed the Jackson car was after Plaintiff had disembarked from the bus, at which time the Jackson car veered to the right of his bus on to the shoulder and struck the said Plaintiff. At that time nothing he could have done would have prevented the accident.
Though the testimony of Jackson is confusing at times and contradictory and raises a question about his ability to perform all of the maneuvers he allegedly attempted to do to prevent the accident, his testimony is to the effect that the cause of the accident — which was the failure of his brakes to work — did not become apparent until he was in the proximity of 35 feet from the rear of the bus when he attempted to brake his car. Thus, had the motorman been observing Jackson continuously from the time he stopped the bus there would have been nothing about Jackson’s driving which would have timely served as a forewarning of impending danger. The driver of the bus exercising the highest degree of care could not foresee or anticipate the alleged failure of the brakes to work on the Jackson car and when the danger became apparent because of such failure and the erratic action of the Jackson car was evident* Plaintiff had already disembarked from the bus and *240 there was nothing the bus driver could have done to prevent this serious accident.
The Trial Court reasoned that because Mr. Ponson, upon observing the unusual movements of Jackson, “ * * * had time to start his car from a stopped position and drive it across Evangeline Street before he heard the crash., * * * ” showed that the erratic movement of Jackson’s car was apparent and that “ * * * there is no good reason why his move to pass on the right of the bus before the bus door opened and certainly before the girl left the steps was not seen by the bus driver. * * * ” A review of Mr. Pon-son’s testimony reveals that he testified “Well, I didn’t see the car hit the girl, but I did see the girl getting off of the bus and the car was coming toward her.” (Emphasis by the Court.) At that time he “ * * * figured I better move because he was going to hit the girl and me too, both, so I shot across the street, across Evangeline Street. * * * As I crossed the street I heard the crash, and I looked in my rear view mirror and I saw the girl flying through the air, * * *.” His observation of the erratic movements of the Jackson car occurred when that car was an estimated seventy-five to a hundred feet from him and an estimated thirty-five to fifty feet behind the bus traveling at an estimated 20 to 35 miles per hour or 291/3 to 511/3 feet per second. Though upon making this observation he, from his vantage point of observation and location some 40 to 50 feet distant from the rear of the bus, accelerated his motor and successfully got out of the path of the Jackson car serves only to show that there was literally a split second elapse of time in which the erratic movement of Jackson’s car became apparent. At that time, from Mr. Pon-son’s testimony, Jackson was going to hit the girl. It is obvious she was in motion disembarking from the bus and there was nothing the motorman, exercising the highest degree of care, could have done to avoid the accident and, consequently, Case was guilty of no negligence.
Therefore, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed; and it is now ordered that there be judgment in favor of Defendant and against Plaintiffs dismissing Plaintiffs’ suit at their costs.
Judgment reversed and rendered.