PICKETT, Judge.
The plaintiffs, Victor L. Dognibene and his wife, Mary D. Dognibene, instituted this suit to recover damages resulting from injuries alleged to have been sustained as the result of an explosion and fire in a yacht, “TRACI ANN”, which they were aboard, on June 7, 1970. The defendants are General Motors Corporation, Arthur B. Dunham and his insurer, Travelers Insurance Company. The case was tried by a jury and resulted in a verdict in favor of plaintiff, Mary D. Dognibene, for $5,000.-00, and a verdict in favor of plaintiff, Victor L. Dognibene, for $10,000.00, and against the defendant, Travelers Insurance Company. The other defendants were not cast in the jury verdicts. Judgment was rendered in accordance with those verdicts. The plaintiffs have appealed devolutively.
The plaintiffs-appellants, on June 7, 1970, attended a party aboard a Chris-craft Yacht, “TRACI-ANN”, owned and operated by Arthur B. Dunham. The boat was powered by two 185 horsepower gasoline engines. The party had spent the day at some Pirogue races on Bayou Liberty, in St. Tammany Parish. Late that afternoon, as the party prepared to return to New Orleans, Mr. Dunham started the motors, and an explosion occurred, followed by waves of intense heat and flames which burned plaintiffs-appellants painfully, it is conceded by all parties that the explosion was caused by the negligence of Arthur B. Dunham.
The award of $10,000.00 to Mr. Dogni-bene, individually and as head and master of the community of acquets and gains existing between him and his wife, Mary D. Dognibene, is not contested. But the appellants contend that the award of $5,000.-00 to Mrs. Dognibene is woefully inadequate. Therefore, the only issue before us is whether the award made by the jury to Mrs. Mary D. Dognibene is adequate.
It is well established in our jurisprudence that the appellate review of the quantum of an award is limited to a consideration of whether the trial judge or jury has abused its discretion. Ballard v. National Indemnity Company of Omaha, *451 Nebraska, 246 La. 963, 169 So.2d 64. In the Ballard case the Supreme Court stated:
“In resolving the question of whether the jury in fixing the amount of the award in the Gaspard case had abused the discretion vested in it by law, we pointed out that ‘ * * * In view of our codal provision, the appellate courts should consider»the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration.’ However, an appellate court should not fix the amount of the award solely to maintain uniformity of awards, thus ignoring the prerogatives of the trial judge or jury in assessing awards in such cases as set forth in Art. 1934 of the Civil Code.”
Article 1934(3) of the Louisiana Civil Code provides:
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury * * *»
In Vincent v. Morgan’s Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. S41, a wrongful death action, the Supreme Court stated:
“Our further conclusion is that this case belongs to a class with reference to which the law declares in specific terms that ‘in the assessment of damages * * * much discretion must be left to the judge or jury,’ and hence that the assessment that has been herein made by the judge should not be disturbed by us unless we are satisfied that there has been an abuse of the discretion so vested in him, and, as we are not so satisfied, that it should remain undisturbed.”
In the present case, Mrs. Dogni-bene was hospitalized immediately after the accident at the Slidell Memorial Hospital, where she was seen initially by Dr. J. R. Diamond, who diagnosed first and second degree burns of the face and both upper and lower extremities. He gave first aid treatment for pain, shock and infection. He first treated the burns with 'Sulfamy-lon, but because of the pain the treatment was switched to Morusan ointment. On June 14, 1970, Mrs. Dognibene was transferred to Southern Methodist Hospital in New Orleans, where she was seen in the Southern Methodist Hospital Emergency Room by Dr. James E. Brown who examined her, and reported the results as follows :
“Examination at the time of admission showed first, well, first and second degree burns of the face, deep dermal burns and first degree burns of both hands extending up the forearm, second and third degree burns over both lower legs, first and second degree burns over the thigh. All in all I estimated this represented thirty to thirty-five per cent second and third degree burns of the face, both hands, forearm, thighs and lower legs. The patient was then admitted to the hospital, begun under what we call half per cent silver nitrate soap therapy, which is a matter of wrapping the burns and soaking them in certain solutions and rewrapping them every twelve hours.”
Dr. Brown testified further that Mrs. Dognibene was placed on antibiotics, pain medication, etc., until she was discharged, on July 14, 1970. Dr. Brown said a first degree burn is similar to a sunburn; a second degree burn is deeper than a first degree burn and causes blisters about the affected area; and that a third degree burn is all the way through all of the layers of the skin into the subcutaneous tissue. Dr. Brown expressed his opinion of Mrs. Dog-nibene’s condition on July 14, 1970, when she was discharged from the hospital, as follows:
“I will just read the discharge summary: The patient was placed on silver nitrate, one-half per cent constant soak treatment. This was done until approximate *452 ly four days prior to discharge. The areas on the hands healed without any skin grafting, however, there is a con-tracture of the little fingers and there is minimal contractures of other fingers. There is not complete function of the left or right hand. The patient is being vigorously encouraged to use physical therapy in this area on these hands. All areas on the face and thighs healed without consequence. At the present time approximately four to five days prior to discharge, silver nitrate treatment was stopped and the legs were wrapped with Furacin in occlusive dressings. There are definite areas of third degree on the leg and it is felt that this will probably come to skin grafting in the future. I did prove to be wrong on that. They did not come to skin grafting.”
Dr. Brown continued to see Mrs. Dogni-bene for further treatment, numerous times until March 14, 1971. During the course of his treatment he referred Mrs. Dogni-bene to Mr. John Davidson for physical therapy in an effort to correct flexion con-tractures of her fingers which threatened to be permanent. However, when the con-tractures of the fingers did not respond to physical therapy, he referred Mrs. Dogni-bene to Dr. William J. Pollock, a plastic surgeon, to treat the contractures of her fingers. Dr. Pollock testified that he first saw the plaintiff, Mrs. Dognibene, on September 17, 1970. He found that she had developed flexion contractures of the little fingers of both hands. Her burns had not totally healed at that time; and Dr. Brown was still treating her for her burns. His function was to evaluate her hands rather than to treat her burns. Dr. Pollock first tried to correct the flexion contractures by dynamic splints, which were placed on her fingers. But this procedure failed to give the necessary flexion to her little fingers; and he decided to perform a “plasty of the skin” of each of the little fingers, with the hope of giving them a greater degree of extension. She was hospitalized on October 25, 1970, and he performed the surgery. He said her fingers were improved by the surgery, but still could not be extended normally, principally because of scar tissue in the finger joints resulting from their having been immobilized during the treatment for her burns.
'
Dr. Pollock last examined Mrs. Dogni-bene on September 12, 1972. At that time the burns had all healed without grafting. With the exception of her little fingers, he found no significant functional impairment as a result of the burns. The burned areas of the skin had healed, but left spotty pigmentation, and areas of lighter color than the surrounding skin which caused cosmetic problems. He found a full range of motion of all fingers of each hand, except the little fingers. There was still limited extension of the little fingers of each hand, because of which he estimated the disability of each hand at from two to three per cent.
Dr. J. Kenneth Saer, an orthopedic surgeon, examined Mrs. Dognibene on August 17, 1971, and again on October 19, 1972, (two months before the trial). As a result of his last examination of the plaintiff, he said:
“This patient has limitation of motion involving the ring and little fingers of both hands and some depigmentation over the hands and wrists as a result of old burns. I would estimate there is a physical impairment of approximately eight per cent of the left hand and seven per cent of the right hand as a result of these burns.
“No further medical treatment is indicated for these problems. In addition there is depigmentation of an area of skin over both legs and mild patchy areas of depigmentation of the skin over the face.”
Dr. Richard Vincent, an expert in the field of plastic and reconstructive surgery, examined Mrs. Dognibene on July 30, 1971, and as a result of this examination, after describing the burns in approximately the *453 same manner as they were described by Dr. Saer, as shown by his report, expressed his opinion as follows:
“This patient has the burns which were described above resulting in the scarring or color changes. At the time of my examination it was slightly over a year since the injury but less than a year since the final healing has taken place.
“I feel that most of the improvement will take place without surgery. I do, however, expect some slight additional improvement over the next twelve months.”
Mrs. Dognibene was seen and examined by Dr. Gustavo A. Colon, a plastic and reconstructive surgeon, on September 15, 1972, and found the following as shown by his report:
“At the present time I do not feel that she will need any further surgery although she does have some limitation of extension in both small fingers bilaterally. She has good range of motion and complete flexion and fairly adequate use of both hands even with this handicap. There is no question that she will continue to have permanent changes in the col- or, texture and thickness of the skin secondary to the severe burns she received to the area.”
Based on the medical evidence submitted by the plaintiffs, and particularly the opinions of Dr. Colon and Dr. Saer, who examined Mrs. Dognibene only a few weeks before the trial, her chief residual disability consisted of some stiffness in the joints of her little fingers which caused some limitation of their extension and resulted in an over all slight impairment of the use of her hands. However, Dr. Colon said: “She has good range of motion and complete flexion and fairly adequate use of both hands even with this handicap.” She had no other functional disability. As a result of the healed burns on both arms, hands and lower extremities she has areas of scarring and depigmentation. Counsel for Mrs. Dognibene emphasizes the cosmetic damage caused by the scarring and depigmentation in the injured areas, and the impairment of the use of her hands due to the limitation of motion of the small fingers of both hands.
The plaintiff, Mrs. Dognibene, claims the award of $5,000 for personal injuries, including pain, suffering, cosmetic damage, and permanent functional impairment of her hands, is inadequate. Following the accident, the plaintiff was hospitalized and treated by Dr. J. R. Diamond, in the Slidell Memorial Hospital until June 14, 1970, at which time she was transferred to the Southern Methodist Hospital in New Orleans where she was hospitalized until July 14, 1970, during which time, and for several months thereafter, she was treated by Dr. James E. Brown. On her admission to the hospital she was found to have first and second degree burns of the face, deep dermal burns and first degree burns of both hands extending up the forearms, second and third degree burns over both lower legs, and first and second degree burns of her thigh. Mrs. Dognibene suffered intense pain and was administered narcotics, until the last three or four days of her hospitalization, when she was treated to remove her dependence on sedatives. A form of pressure dressing was applied to the burned tissues during the period of her treatment. The treatment consisted of wrapping Mrs.' Dognibene’s face, hands, forearms, thighs and lower legs with a medicated solution. The treatment was quite painful, and it was necessary to repeat the treatment every twelve hours by removing the dressings and rewrapping the burned areas. After recovery, the burned areas of plaintiff’s face, hands and lower limbs were still quite sensitive to heat and sunlight; and her skin was subject to easy trauma. As a result of her burns, Mrs. Dognibene developed flexion contractures of her little fingers. She was hospitalized again on October 25, 1970, and submitted to surgery of her hands in an effort to give her fingers greater flexion. In view *454 of the extent of the plaintiff’s injuries and the pain and suffering endured by her, we conclude the award of $5,000 for her general damages is so inadequate as to constitute an abuse of the “much discretion” vested in the jury; and that the award should be increased to $20,000.
For the reasons assigned, the judgment appealed is amended by increasing the award to plaintiff, Mrs. Mary D. Dogni-bene, to $20,000, and, as amended, is affirmed. The costs of this appeal are assessed to defendant-appellee.
Amended and affirmed.