319 So.2d 812 (1975)
Anthony C. PLESCIA and Marion Marino Plescia
v.
Arthur B. DUNHAM and Travelers Insurance Co.
No. 10389.
Court of Appeal of Louisiana, First Circuit.
September 18, 1975.
*813 Stephen A. Duczer, Slidell, for appellants.
Wilson F. Shoughrue, Jr., New Orleans, and France W. Watts, III, Franklinton, for appellees.
Before LANDRY, BLANCHE and BAILES, JJ.
BLANCHE, Judge.
Plaintiffs-appellants, Anthony C. Plescia and Marion Marino Plescia, husband and wife, appeal a judgment of the Twenty-second Judicial District Court which granted Marion Plescia the sum of $5,000 general damages, Anthony Plescia, $3,500 general damages and also $1,248.13 special damages, against the defendants-appellees, Arthur B. Dunham and Travelers Insurance Company, all with legal interest thereon from the date of judicial demand until paid. The defendants were taxed with all costs of the proceedings. We affirm.
On June 7, 1970, the plaintiffs, along with Victor L. and Mary D. Dognibene, attended a party aboard a Chriscraft yacht, "Traci-Ann," owned and operated by Arthur B. Dunham. The boat was powered by two 185 horsepower gasoline engines. The group had spent the day at pirogue races on Bayou Liberty in St. Tammany Parish. Late that afternoon as they prepared to return to New Orleans, Dunham started the motors and an explosion occurred, followed by waves of intense heat and flames which burned plaintiffs and the other guests.
The Dognibenes and the Plescias sued Dunham for their injuries. Even though the Dognibene suit was jury tried and the Plescia suit judge tried, they were consolidated and heard in one proceeding. The Dognibene case was heard on appeal by this Court at 286 So.2d 449 (La.App. 1st Cir. 1974), wherein it was "conceded by all parties that the explosion was caused by the negligence of Arthur B. Dunham."
In the instant Plescia suit, the negligence of Dunham is uncontested. The issues on this appeal center around quantum and involve primarily the damages of Anthony Plescia, although both he and his wife have appealed.
Plescia and Edward V. Brown were partners in Western Packing Company, slaughterers and provisioners. Brown kept the books and Plescia did the buying for the business, and they split the remainder of the workload on a 50-50 basis. The remaining work included sales and service to their respective retail butcher customers and other general business activities around the meat packing plant. For the three years prior to the accident each partner earned approximately $2,400 per month from the business.
Following the accident, Plescia was treated by Dr. James E. Brown, the son of his partner. He was released on June 25, *814 1970. Dr. Brown deposed that the plaintiff was unable to work for five to six weeks following the accident.
Prior to Plescia being able to return to work, Brown stated that he could not handle Plescia's workload in addition to his own. After approximately seven to ten days of attempting to do both jobs, Brown testified that he could no longer take the pressure and unilaterally closed the business.
On the trial of the matter the plaintiffs contended that the closure of the business was a direct result of the accident. They submitted the testimony of John Coerver, C.P.A., to establish that the business had a far greater economic value as a going concern than it did shut down. The plaintiffs then argued that the accident caused the business to be closed, and since Dunham was responsible for the accident, he was also responsible for the loss that Plescia suffered as a result of the closure. They contended that the measure of his loss is the difference between the going business value and the shut-down value. In their petition the plaintiffs asserted that the difference in value was $42,000.
Concerning the foregoing, the defendants entered an exception of "no cause and right of action" while the trial was in progress. The defendants contended that the proper party to bring an action for any business loss of the partnership was the partnership entity and not its individual members. Therefore, they contended that Plescia, individually, had no right to bring the action for recovery of the alleged price differential.
The trial judge acknowledged that this peremptory exception could be filed during the course of the trial and accepted it even though it did not meet the standards set by the Twenty-second Judicial District Court in that it was not accompanied by supporting memoranda. Then, not wishing to tie up the jury trial to hear the merits of the exception, he referred the exception to the merits, as is his prerogative under Louisiana Code of Civil Procedure Article 929.
After trial, the judge pretermitted a decision on the exception by finding as a fact that regardless of the plaintiffs' right to bring the action, he "did not feel there was adequate proof to conclude that the closure of the business in which Mr. Plescia was a partner, was a result of this accident."
On appeal the plaintiffs assert the trial judge erred in holding that the accident was not the cause of the business closure.
An appellate court should not disturb the factual findings of the trial court in the absence of manifest error. Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.Sp.Ct.1975); Spreen v. Gibbs, 305 So.2d 494 (La.Sp.Ct.1975). The guidelines to determine manifest error were set forth in Canter v. Koehring Co., 283 So.2d 716 (La.Sp.Ct.1973), as follows:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." (283 So.2d at 724) *815 We will now review the record to determine the correctness of the trial judge's conclusion.
Plescia and his partner Brown were the only witnesses to testify regarding the effect of the accident upon the closure of the business. Both asserted that were it not for the accident they would not have closed the business.
However, various inconsistencies in their testimony raise questions concerning the credibility of their purported reason for closure. There is no indication from the record that either Brown or Plescia ever consulted the attending physician, Dr. Brown, concerning the probable length of Plescia's disablement. Brown closed the business within seven to ten days after the accident without ever inquiring of his own son, who was his partner's physician, as to whether or not Plescia would be able to return to work in the near future, nor did Plescia himself attempt to determine the expected length of his incapacity so that he could inform Brown. Brown contended that Plescia was in "kind of a shock" after the accident and, therefore, was unable to apprise him of the expected length of his absence.
Dr. Brown deposed that Plescia, who was not hospitalized but rather treated on an out-patient basis, would have been able to return to work within five to six weeks following the accident, but little interest was shown in this information by either partner, as neither ever asked the doctor concerning Plescia's return.
Concerning attempts to obtain relief help for Brown, it is clear that neither of the partners put forth a good faith effort to obtain such help. We realize, of course, that the nature of the business and Plescia's functions therein involved a great deal of personal contact with the customers and it would be unfair to require them to obtain immediate help in that particular area. However, Brown attempted to do all of the clerical work in addition to all of the sales and services when perhaps other arrangements could have been made. The partnership employed a dozen or more employees, including two bookkeepers, but the partners contended that none of them were qualified to fill in and perform the various jobs done by Plescia.
Brown admitted that some of their customers could have been serviced by telephone but that he did not attempt to do so, nor did Plescia attempt to service customers by telephone from his home during his convalescence.
The business was not reopened upon Plescia's recuperation. The reasons given were that their customer contacts were lost during the five-week closure and that during the period of time needed to regain their former volume of business the partnership would have suffered too great a monetary loss. These contentions seem strained in view of the fact that the partners were experienced, having been in business for 37 years, and the business was very prosperous, with both partners earning approximately $2,400 per month after all expenses were paid. The trial judge did not accept the partners' announced reasons for closure, and our review discloses that there was no error in this determination.
We find the trial judge was within his great discretion when he referred the defendant's exception of no right of action to the merits. We also find no error in the fact that thereafter he disposed of the case on the merits rather than pass upon the exception. All the evidence in this case had been heard, and both parties had their day in court. It would have been a vain and useless thing to pass upon the merits of the exception and perhaps thereby have required the defendant to stand another trial at the hands of the partnership rather than with Plescia individually. A new trial would not change the fact that the accident was not the cause of the business closure. Accordingly, the question of *816 whether or not Plescia, individually, had a right of action for the alleged damages is moot.
The trial judge refused to award damages to the plaintiffs for loss of income. The plaintiffs contend this was error and that Plescia should be awarded his lost income for the entire period of his incapacitation.
Plescia was a partner in Western Packing, and he contends his inability to work greatly decreased the sales volume of the business since he was primarily a salesman. Therefore, he argues that his personal income, which was derived from the partnership, was also greatly decreased as a result of the accident. We note that Plescia was unable to work for approximately six weeks. However, since the business was closed after the first ten days of his incapacity, he would obviously only have a claim for lost income encompassing that ten-day period. No claim lies for the remaining period of disability since we have affirmed the trial judge's ruling that the closure was not due to the accident.
The evidence indicates that each partner received a salary of $175 per week and the excess profits were left to accumulate to be eventually divided when the bank account so justified. Therefore, each partner's weekly income from the business would be the total of $175 plus the undivided profit for that week. The record reveals that both Plescia and Brown continued to draw the regular $175 per week salary during the ten-day period. The plaintiffs obviously seek the difference between $250 (Plescia's draw for ten days) and Plescia's undivided net profit for the ten-day period.
John Coerver, C.P.A., testified that the total sales of the business were reduced by $13,000 during the month of June, the last month of actual operation. (Routinely, sales at that time were running approximately $120,000 per month.) The plaintiffs contend this reduced volume was due solely to the absence of Plescia. Coerver also testified that for the entire fiscal year ending March, 1971, the partnership lost $16,713.52; but no evidence was adduced from which June's net distributable income to each partner could be determined, nor was any proof adduced to establish the actual profit or loss of the ten-day period in question.
In fact, even at the time of trial, some two years post-accident, when Plescia was asked if he knew the amount that the partnership's profit was diminished by the $13,000 reduction in sales volume, he replied:
"Substantially. No, I couldn't say dollars and cents but I would say it would put a considerable dent in it." (Transcript of Testimony, Record, p. 523)
No other proof was offered by the plaintiffs to establish the partnership's profit or loss for the period in question. Therefore, even though we know Plescia drew his regular salary for the period, we cannot calculate his total earnings, as no proof was offered concerning the distribution of profits or losses for the period.
Plaintiffs offered proof that Plescia was earning $2,400 per month from the business prior to the accident, but without evidence establishing his actual income for the pertinent ten-day period, it is impossible to determine the amount of income lost as a result of his being unable to work. Pretermitting a decision as to whether or not the plaintiff Plescia or the partnership would be the proper party to sue therefor, there is simply no evidence to support an award for loss of income for the period in question.
For the above and foregoing reasons, the judgment of the trial court is affirmed, at appellants' cost.
Affirmed.