*357
 
 HIGGINS, Justice.
 

 The plaintiff instituted this suit against the Teche Lines, Inc., a carrier of passengers for hire, Jack Gorum, the owner of the Arkansas Traveler (a truck with a trailer) and his liability insurer in solido, to recover damages for personal injuries, medical expenses, loss of salary, etc., said to have been sustained and incurred as a result of a head on collision between the omnibus on which he was a passenger and the truck, allegedly caused by the joint and concurrent negligence of the drivers of both vehicles.
 

 The defendants, in separate answers, admitted the accident but denied that the plaintiff was injured, and averred that their respective drivers were free from fault.
 

 There was judgment in favor of the plaintiff and against the defendants, in solido, in the sum of $5,000, the insurance company’s liability, under its policy, being limited to that amount, and judgment against Gorum and the Teche Lines, Inc., in solido, for the additional sum of $6,164, plus interest, expert’s fees and costs of court.
 

 The Teche Lines appealed suspensively, Gorum appealed devolutively, and the Casualty Company paid the judgment to the extent of $5,000. The Court of Appeal for the Parish of Orleans annulled the judgment insofar as the Bus Company was concerned, on the ground that this Court, in Teche Lines, Inc., v. Jack Gorum, 202 La. 993, 13 So.2d 291, and the Court of Appeal of the First Circuit in Leforte v. Gorum et al., 7 So.2d 733, held upon the same record now before us, that the driver of the bus was entirely free from negligence or fault in causing the collision. The judgment insofar as Gorum was concerned was affirmed. 15 So.2d 637.
 

 The plaintiff applied to this Court for a writ of certiorari or review, calling our attention to the fact that his alert attorney had appeared before us in Teche Lines, Inc., v. Gorum, supra, when the case was called for argument here and asked for the privilege of being heard as an amicus curiae, due to the fact that the present proceeding was then pending before the Court of Appeal, Parish of Orleans, on the same record. The request was denied, counsel being assured that since the Teche Lines case against Gorum involved only the rule of ordinary care, the decision therein would not be binding in the instant one, where the law is different, requiring the carrier to exercise the highest degree of care to prevent injury to its passengers. Anything we stated in that case that might be con- ■ strued as determining the issue involved in this one necessarily must be treated as obiter dictum, because the present suit was not before us at that time. We granted the writ and the matter is now here for review.
 

 There is no dispute or doubt as to the rules of law applicable to this case. They are correctly stated in the case of Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420, 421, as follows:
 

 “It is well established that a carrier of passengers is not an insurer, but it is required to exercise the highest degree of
 
 *359
 
 care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. In truth, in many cases, the fact of injury to a passenger gives rise to the presumption that the carrier was negligent, ‘since, under ordinary conditions, with proper direction and control, taxicabs do not collide with other vehicles. Hamburger v. Katz et al., 10 La.App. 215, 217, 120 So. 391.' Dawson v. Toye Bros. Yellow Cab Co., Inc., et al., 15 La.App. 326, 131 So. 716.
 

 *****
 

 “It is also well established in our jurisprudence that, where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault, but it is not required to show how and why the passenger was injured in order to bar recovery. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376; Dillon v. New Orleans Public Service, Inc., La.App., 170 So. 406. To the same effect see Bynum v. City of Monroe, La.App., 171 So. 116; Wark v. New Orleans Public Service Inc., La.App., 168 So. 797; Hughes v. Baton Rouge Electric Company, La.App., 188 So. 473.”
 

 On September 12, 1940, at 1:30 o’clock p. m., the Teche passenger omnibus weighing 22,000 pounds and being 32 feet in length, with its full capacity of passengers, was proceeding on the Airline Highway from Baton Rouge to New Orleans. On the same road a yellow Highway truck with a red flag towards the rear of it and pulling a grass cutting machine was going in the direction of Baton Rouge. The Levy Bros, truck and trailer, having an overall length of 25 feet was following the Highway truck. To the rear of this vehicle was the 22 foot truck and trailer of Jack Gorum, the Arkansas Traveler, loaded with 14,500 pounds of sugar. The Highway equipment was moving forward at the rate of three or four miles per hour and was in charge of two operators. The two trucks to the rear of it had been proceeding at the rate of about twenty-five or thirty miles per hour, 200 or 300 feet apart, for fourteen miles prior to arriving at the point four miles south of Gonzales. In this vicinity the highway is straight for a considerable distance. It consists of an 18 foot concrete strip with a black line down the center and a 25 foot wide earth shoulder on the side of the concrete strip where the bus was travelling. On the opposite side of the concrete, where the Highway equipment and the other two vehicles were approaching, the earth shoulder of the road is several feet in width. Adjacent to each of the shoulders of the road were canals. For a long distance in both directions from the scene of the accident there was nothing but a wooded section. The weather was clear and dry and there was nothing to intercept the views of the drivers of the respective machines, except the vehicles themselves. The operator of the bus observed the approaching Highway truck when they were nearly a mile apart and when he reached a point about 900 feet from it, he reduced the speed of the bus from approximately forty or forty-five miles an hour to about thirty or thirty-five miles per hour because the Levy truck at that time was also approaching the High
 
 *361
 
 way truck from the rear. This action was taken by the bus operator as a precaution or safety measure in anticipation of the possibility that the driver of the Levy truck would attempt to go around the Highway truck and if he did so, would thereby block the path of the oncoming bus. The driver of the Levy truck decided he did not have time to negotiate the passage and after giving the proper signal, slowed the speed of his truck so as to remain on his right side of the concrete road and behind the Highway truck. In the meantime, the operator of the Arkansas Traveler admittedly neglected to keep a proper lookout and failed to observe that the Levy truck on his side of the road had reduced its rate of speed to conform to that of the preceding slow moving Highway truck. When he saw how near he was to the Levy trailer, he concluded, after applying his brakes that due to the heavy load he would be unable of the trailer in front of him. Gorum’s to stop in time to avoid striking the rear employee did not notice the Highway truck and was unaware of the approaching bus from the opposite direction, his view being intercepted at that time because he was too close to the rear of the Levy trailer, which was covered with tarpaulin. When he was about 20 feet from the back of the Levy truck and going about 15 miles per hour, he swerved his wheels sharply to the left in order to avoid striking the Levy truck and to go around it. As he pulled over he discovered the presence of the bus, which at that time had passed the Highway equipment and had reached a position on its right side of the road where the front of the bus was adjacent to the radiator of the Levy truck. Gorum’s operator instantly decided to cross the 9 foot concrete strip to his left and run upon the 25 foot shoulder of the road, in order to avoid a head on collision with the bus and fully accelerated his motor to accomplish this purpose. The bus driver quickly guided the bus to his right and off to the concrete on to the 25 foot shoulder of the road, thinking that the truck driver would remain on the concrete strip and thereby pass him. When the bus driver saw that the Arkansas Traveler completely blocked his path he instantly applied his brakes and succeeded in reducing the speed of the bus from approximately 25 or 30 miles per hour to about 15 or 18 miles per hour at the time the front end of the bus struck the right front side of the trailer. Both vehicles were practically off of the concrete strip at the ti'me they stopped. After the accident, the driver of the Arkansas Traveler admitted that he had no intentions of going around the Levy truck until he realized that he had to do so in order to avoid running into the rear of it and that the brakes on his truck were not properly operating
 

 The plaintiff seeks to fasten liability on the carrier, contending that its driver failed to exercise the highest degree of care required under the facts and circumstances of this case, in the following respects: (1) In not placing the bus under proper control by so reducing its speed that it could immediately stop when it became apparent that he was approaching a “block” in the road; (2) in not sounding his horn as he came near the “block” in the road; and
 
 *363
 
 (3) in not discovering the presence of the trailer until it came out from behind the Levy truck.
 

 Rule
 
 7,
 
 paragraphs (a), (b) and (c) of section 3, Act 21 of 1932, regulating traffic on public roads, read:
 

 “The driver of any vehicle over-taking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to' the right side of the highway until safely clear of such overtaken vehicle.
 

 “The driver of an overtaking vehicle shall give audible and sufficient warning of his intentions before overtaking, passing or attempting to pass a vehicle proceeding in the same direction.
 

 “The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.”
 

 In Oppenheim v. Toye Bros. Yellow Cab Co. et al., supra, the passenger of the taxicab sued the company to recover damages for personal injuries sustained, and obtained judgment in the lower court. It appears that the taxicab driver stopped his cab at the corner of Carrollton and Claiborne Avenues in obedience to the red traffic light. When the semaphore signal showed “green” the street cars and other traffic which had stopped, started and there suddenly appeared a Plymouth automobile being driven up Claiborne Avenue against the red light and across the path of the moving traffic at a rate of speed of about 45 miles an hour, in violation of the New Orleans traffic ordinance. The chauffeur of the taxicab stopped suddenly but the right running board and rear fender of the Plymouth car struck the front bumper of the taxicab. The Appellate Court annulled the judgment of the district court holding that the taxicab driver was entirely free from fault in causing the accident and that the emergency was created exclusively by the recklessness and unlawful action of the Plymouth driver and, therefore, the carrier was not liable. This Court granted a writ in the case with reference to a certain legal question and upon reviewing the testimony concluded that the record showed that “ * * * the taxicab driver exercised the highest degree of care in endeavoring to avoid the impending disaster, brought about by the gross negligence wf Edyburn [the operator of the Plymouth].” 203 La. 1067, 14 So.2d 854. (Brackets ours.)
 

 In Gager v. Teche Transfer Co. et al., La.App., 153 So. 69, 70, an injured passenger sued the carrier and recovered in the trial court. It was proven that the bus was in the act of passing a truck going in the opposite direction when the driver of an automobile in the rear of the truck veered to his left for the purpose of passing it and thereby came into collision with the
 
 *365
 
 "bus. As the two vehicles collided, the bus went off the road and partly in a canal. The bus was being driven at a rate of speed of forty miles an hour and the truck •and the automobile were raising considerable dust and, therefore, it was contended •that the bus driver should have proceeded much slower. In annulling the judgment of the district court, the Court of Appeal said:
 

 “ * * * The spe'ed of the omnibus was not excessive and the omnibus driver could not foresee that Rev. Nicol would ■suddenly quit his place in the rear of the truck and endeavor to pass it as it was passing the omnibus, to do which required space for the omnibus, the truck, and automobile in the road at the same time, and the space necessary to that end was obviously lacking. The omnibus driver had no reason to suppose or suspect such a movement on the part of the automobile driver. His act was one of those things that no one would ordinarily look forward to or expect to take place.”
 

 In the case of Gehm v. Yellow Taxi Corporation et al., 245 App.Div. 816, 281 N.Y. S. 320, the court rejected the claim of a passenger against the carrier holding that the chauffeur was blameless. The taxicab was going in a westerly direction and the ■other car in an easterly direction. The approaching car turned to the left in order to pass a truck and thus collided with the ■taxicab.
 

 It is well settled that the driver of a motor vehicle is not negligent in failing to. anticipate that another car operator, who is lawfully and prudently driving, will suddenly disregard the traffic laws and become reckless when there is nothing in his conduct to indicate he will do so. Benton v. Griffith, La.App., 184 So. 371; Rohl v. United Elec. Rys. Co., 50 R.I. 478, 149 A. 375; Gritsch v. Pickwick Stage System, 131 Cal.App. 774, 22 P.2d 554. Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 2, Perm.Ed., § 919, page 60.
 

 In the light of the foregoing authorities and considering the issues raised by the plaintiff, we observe that the carrier’s side of the highway was not blocked nor was the other side, the traffic there continuing forward at a slow rate of speed. The operators of the highway and the Levy trucks, by their actions and in compliance with the law, showed the bus driver they were remaining on their side of the road. At that time, Gorum’s employee was also driving his truck on its right side of the road at a moderate rate of speed. There was nothing in the conduct of any one of the drivers to indicate that either of them was preparing or expecting to drive to his left .or into the path of the oncoming bus. The bus driver had a right to assume that they would remain on their side of the road in obedience to the traffic law. It was impossible to discern that one of them would suddenly and without any warning whatsoever flagrantly violate the traffic law by recklessly dashing out in front of the bus. A carrier of passengers is liable for the slightest negligence which contributes to an accident that causes injury to a passenger but it is not an insurer of the passenger’s safety against negligent
 
 *367
 
 acts of third parties and their palpable disregard of the law. The highest degree of care doctrine is not synonymous with a guarantee of the passenger’s safety against any possible injury. Until there is some indication, which would require a vigilant, competent, and experienced driver exercising the highest degree of care to observe the contemplated reckless and unlawful act of another, it is not negligence on his part to fail to do so. To hold otherwise would require the operator of a passenger vehicle to foresee every unexpected and sudden contingency. To place such an obligation on him would require him to- speculate with mere possibilities and pure conjecture. As there was nothing whatsoever to indicate to the driver of the bus that it would not be perfectly safe to proceed on his right hand side of the road, which was unobstructed, he was neither required by law nor the exercise of the highest degree of care to bring his bus to such a low rate of speed so as to be able to stop instantly, if someone suddenly drove out in front of him in violation of the traffic law.
 

 The testimony of the driver of the Arkansas Traveler conclusively shows that he had no intention of going around the Levy truck and remained on his side of the road until he was in close proximity to it. It was at the last moment when he realized that he had gotten so close to the rear end of the trailer that he would be unable to avoid striking it, that he, on the spur of the moment, made up his mind to pull to the left. It was at that same moment that he also realized that his brakes were not operating properly. If Gorum’s driver himself did not know that he was going to turn to the left until compelled to do so by a situation caused entirely by his own recklessness, then how could it possibly be said that the driver of the bus should have anticipated such conduct on his part.
 

 There is no statutory requirement that the driver of vehicles approaching each other from opposite directions on their respective right sides of the road shall sound their horns as a warning to each other. As it was daylight and a clear day and the bus was clearly visible, there was no reason to anticipate that the operator of a vehicle going in the opposite direction had failed to keep a proper lookout and observe the presence of the bus. The failure to sound the horn of the bus under the circumstances of this case is too remote to be considered as a proximate or contributing cause of the accident.
 

 It is argued that the bus driver was guilty of negligence in not observing the fact that the Arkansas Traveler was running closely behind the Levy truck. This statement is predicated on the testimony of a passenger, who was sitting three seats to the rear of the bus driver and who stated that he saw the Arkansas Traveler when they were about two and a half blocks from it. We agree that the bus driver, maintaining the highest type of vigilance, should have seen the Arkansas Traveler, if a passenger was able to see it when he was not under any duty to keep a lookout. The law is that a driver of a motor vehicle is held to have seen that which proper vigilance would have revealed to him. However, if the driver of the bus had actually
 
 *369
 
 seen the Arkansas Traveler, he would have known that it was traveling on its right side of the road at a rate of speed of about twenty or twenty-five miles an hour and that there was nothing in the manner in which the vehicle was being driven to indicate that it would suddenly and unexpectedly turn to its left and across the path of the approaching bus.
 

 The theory that the driver of the bus had sufficient opportunity, after the traveler made its appearance on the wrong side of the road, to avoid the collision is not advanced by the learned counsel for the plaintiff. It seems to be conceded that the operator of the bus did everything possible, after he became aware of the presence of the Arkansas Traveler in his path, to prevent the accident. Our review of the evidence convinces us that he exercised the highest degree of care and skill in his attempt to avoid the collision but was unable to do so, due to the close proximity of the vehicles at that moment and the suddenness of the emergency.
 

 It is our opinion that the sole and proximate cause of the accident was the gross negligence of and the flagrant disregard of the traffic law by the operator of the Arkansas Traveler and that the bus driver was entirely free from fault.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed; relator to pay the costs of this Court and appellant, Teche Lines, Inc., to be relieved of the payment of all costs in the lower courts.
 

 O’NIELL, C. J., does not take part.