138 So.2d 610 (1962)
Mrs. Eliska ALPHONSE and Mrs. Althea Gasnard
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 21565.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1962.
*611 Revius O. Ortique, Jr., New Orleans, for plaintiffs-appellees.
Alvin R. Christovich, William W. Ogden, New Orleans, for defendant-appellant.
Before YARRUT, JOHNSON and HALL, JJ.
YARRUT, Judge.
Defendant appeals from a judgment in favor of plaintiffs awarding damages for personal injuries sustained while passengers in a bus operated by defendant.
The bus was traveling north on its regular route on North Broad Avenue, in the City of New Orleans, and stopped at the intersection of St. Bernard Avenue, at a scheduled stop, in obedience to a red traffic signal and to take on passengers, among them the plaintiffs.
Both of these avenues have two roadways separated by an elevated neutral ground, and controlled by an electric redamber-green electric semaphore traffic light.
Plaintiffs entered the bus and paid their fare. Before taking their seats the bus started on a green light, traveled about fifteen feet into the first or nearest roadway of St. Bernard Avenue, when the bus suddenly stopped. Plaintiffs were thrown to the floor of the bus, and sustained personal injuries.
Defendant admits these happenings, but denies any negligence on its part, alleging that, after the bus had proceeded and entered St. Bernard Avenue to continue its trip on North Broad, an automobile, traveling in the lane to its left, suddenly swerved across its path for a right turn into St. Bernard in the direction of the River; that, to avoid a collision with the automobile, its driver was forced to make a sudden stop.
The identity of the automobile is not known because it continued down St. Bernard Avenue without stopping and without its license being noted. Defendant's witnesses could only describe the color of the automobile, and that it was driven by an elderly person, with two children as passengers.
The trial court found the following facts as to the cause of the accident, with which we agree:
"The bus was being driven north on Broad St., by a student driver, under the supervision of an experienced operator, Mr. Morris Noto. The bus stopped at the intersection of N. Broad and St. Bernard Ave., in order that the passengers could board the bus. Vehicles were parked directly behind the Bus stop.
"The bus driver proceeded north on a green light. The driver testified that he looked in the rear view mirror and saw a particular automobile proceeding on Broad St., in the same direction *612 as the bus, but in a line of traffic immediately adjacent to it.
"When the bus had traveled into one of the three lanes of St. Bernard Ave., which carries traffic down town, a sudden emergency occurred. The above mentioned vehicle traveling on Broad St., suddenly and negligently swerved around in front of the bus and proceeded onto St. Bernard Avenue. The driver of that automobile did not indicate any such maneuver.
"At this time, in order to avoid a collision, the bus driver immediately applied the full force of his brakes. His speed, at this instant, was estimated to be between 5 and 10 miles per hour. The bus then came to a sudden, halting stop. The plaintiffs were walking to the rear of the bus. Mrs. Alphonse was thrown to the floor; Mrs. Gaspar was thrown backward and was caught by the Supervisor, Mr. Noto."
However, the trial judge erred in applying the law applicable to the facts found by him (supra) which we quote from his reasons for judgment as follows:
"A vehicle attempting to turn from Broad St., into St. Bernard Ave., would have to make such a sweeping arc that an experienced bus driver would have immediately been alerted to the danger and avoided an `all out sudden stop.' Further, an experienced bus driver would be better prepared to avoid this type of stop. This because a bus driver tends to become more defensive as he becomes more experienced. (See testimony Mr. Adam Ciuffi). Having seen the car on his left and parallel to the bus, the driver should have defensively anticipated the possible impatient and reckless `beat the bus' maneuver.
"The Instructor testified that on many occasions people will take a turn in front of the bus. `No, they do it all the time. They make turns. * * * Could I have seen the car? I imagine I would have seen the car coming.' (See testimony of Mr. Morris Noto.)
"It is the opinion of the Court that the student operator was not on the `look out' at a time when he should have been. Consequently, he did not exercise that highest degree of care for the safety of his passengers, which is required by law."
An attempt was made to prove that the bus driver was a novice and had to be accompanied by an instructor. It is true that the bus driver had recently been employed by the defendant and was accompanied by an experienced instructor. However, the apprentice bus driver had many years experience as a truck driver, and his instructor testified he would have done the same had he been driving the bus.
The effect of this conclusion is to make the carrier the absolute insurer of its passengers against any and all illegal conduct of other motorists, and require their drivers to be endowed with supernatural power to discern when and how every other motorist will violate traffic laws, notwithstanding every fact and circumstance would justify no such conclusion.
The law places on the common carrier only the burden of exculpating itself from any negligence of commission or omission which caused injury to a passenger. In this case defendant produced its driver, his instructor, and three passengers. All testified that the bus started on the green light, continued in the curb lane, did not "nose" into or enter the left lane, and had travelled 15 feet into the St. Bernard intersection, when it stopped suddenly to avoid striking the automobile making an unexpected right turn across its path.
The law applicable to the duty incumbent upon common carriers of passengers is clearly set forth in Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378, which is reviewed and discussed in Blanchard v. Baton Rouge Bus Company, La.App., *613 131 So.2d 232, from which we quote as follows:
"`It is well settled that the driver of a motor vehicle is not negligent in failing to anticipate that another car operator, who is lawfully and prudently driving, will suddenly disregard the traffic laws and become reckless when there is nothing in his conduct to indicate he will do so. Benton v. Griffith, La.App., 184 So. 371; Rohl v. United Elec. Rys. Co., 50 R.I. 478, 149 A. 375; Gritsch v. Pickwich Stage System, 131 Cal.App. 774, 22 P.2d 554. Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 2, Perm.Ed., § 919, page 60.
"`* * * A carrier of passengers is liable for the slightest negligence which contributes to an accident that causes injury to a passenger but it is not an insurer of the passenger's safety against negligent acts of third parties and their palpable disregard of the law. The highest degree of care doctrine is not synonymous with a guarantee of the passenger's safety against any possible injury. Until there is some indication which would require a vigilant, competent, and experienced driver exercising the highest degree of care to observe the contemplated reckless and unlawful act of another, it is not negligence on his part to fail to do so. To hold otherwise would require the operator of a passenger vehicle to foresee every unexpected and sudden emergency. To place such an obligation on him would require him to speculate with mere possibilities and pure conjecture. * * *'
"Though a common carrier must exercise the highest degree of care to protect its passengers from anticipated dangers, such anticipated dangers do not require that the driver foresee the possibility of the happening of any accident but only those that would result without the exercise of due care. A carrier is not made liable to a passenger merely by reason of the happening of an accidentit is not the insurer of the safety of the passengerand especially when the injury to the passenger results from the negligence of another, the carrier is discharged from liability upon the showing that no negligence on its part proximately caused the injury."
Since the defendant's driver was confronted by a sudden emergency, through no fault of his own, and was violating no rules of traffic at the time either as to position or speed, and was guilty of no negligent act of commission or omission, we are constrained to hold that the sudden stop was due solely and only to the negligence of the motorist who suddenly and illegally turned across its path to make a right turn.
The judgment of the District Court is reversed, and there will be judgment in favor of defendant and against plaintiffs, dismissing their suit at their cost.
Reversed.