305 So.2d 481 (1974)
Daisy Carter, wife of/and Robert L. CARTER
v.
NEW ORLEANS PUBLIC SERVICE, INC., et al.
No. 54855.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 17, 1975.
*482 Joseph S. Russo, Jefferson, for plaintiffs-applicants.
C. B. Ogden, II, New Orleans, for defendants-respondents.
MARCUS, Justice.
Plaintiffs, Daisy and Robert L. Carter, instituted this suit against defendant transit company, New Orleans Public Service, Inc., and its bus driver, Nathanial Dunams, for damages allegedly received by Mrs. Carter while a passenger on a bus owned by defendant transit company and operated by defendant bus driver. After trial by jury, a verdict was rendered in favor of plaintiffs, awarding Daisy Carter the sum of $25,000.00 and her husband, Robert L. Carter, $1,600.00. The trial judge signed a judgment in accordance therewith. Defendants appealed to the Fourth Circuit Court of Appeal which reversed and dismissed plaintiffs' suit. 293 So.2d 527. We granted certiorari.
The primary issue presented for our review is the correctness of the judgment of the court of appeal reversing the finding of liability of the part of the defendants. Only if we find that the court erred in this regard do we reach the issue of quantum.
The accident occurred at approximately 10:30 a. m. on June 25, 1971 at the intersection of Chef Menteur Highway and Desire Street in the City of New Orleans. Daisy Carter boarded a New Orleans Public Service, Inc. bus at a transit stop on Chef Menteur Highway near the aforesaid intersection. The bus was headed outbound, or in an easterly direction, on the Chef Highway. When Mrs. Carter boarded the bus, it was stopped in obedience to a red traffic light. After boarding the bus, she handed the driver a transfer and started toward the rear of the bus. She was carrying a bag of groceries in her left hand and an umbrella and purse in her right hand. Her intended destination was the third cross seat on the right hand side of the bus. As she walked towards this seat, the bus began moving straight forward. When it reached a point midway in the intersection, the bus came to an abrupt stop to avoid hitting a car that had suddenly driven across its path. Mrs. Carter was *483 thrown backward to the floor, causing injuries to her head, neck and back.
At the trial of this matter, three witnesses, Daisy Carter, Nathanial Dunams and Leonard Williams, testified as to the facts of the accident.
Mrs. Carter added little to the above description. This is understandable since she was walking down the aisle to the rear of the bus when the accident occurred. She stated that the bus stopped a few feet on the New Orleans side of the bus stop. The bus proceeded in a straight path soon after she boarded the bus. She further testified that she did not see a car passing on the left hand side of the bus as she walked to the rear.
Nathanial Dunams is the driver of the bus involved in this accident. He stated that the traffic light was red when Mrs. Carter boarded the bus and, as she was walking to the rear, the light changed to green. He looked to the left and checked the intersection to see if it was clear before proceeding forward. He then drove forward slowly and had travelled the ten feet to the corner and into the intersection to the middle of Desire Street, which is "almost a four lane street," when a brown Chevrolet made a sudden unexpected right turn across the path of his moving bus. He further testified that the car had been travelling in the adjoining lane on the Chef Highway heading in the same direction as the bus before executing a right turn into his path. In order to avoid a collision, Dunams immediately applied his brakes. The sudden emergency stop caused Mrs. Carter to fall backwards.
Leonard Williams was a passenger on the bus. He testified that he was seated in the rear of the bus and had a clear view of the accident. He stated that the light was red for the bus when Mrs. Carter boarded. When the light changed to green, the bus began to move forward. As it proceeded into the intersection, an automobile, in violation of a red light, cut directly across the path of the moving bus. His testimony is unclear as to the location from which the unknown vehicle came. At one point, he stated it was coming from the opposite direction and turned left into Desire Street in front of the bus. At another point, he said that the car came out from the curb and cut right in front of the bus. In any event, his testimony is certain that the bus was proceeding on a green light, that the unknown automobile entered the intersection on a red light and cut in front of the path of the bus and that a collision would have definitely occurred had the bus driver not slammed on the brakes of the bus.
We recognize the high degree of care required of carriers to their fare-paying passengers. It is well settled that the mere showing of an injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely imposes upon the carrier the burden of exculpating itself of negligence. Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963).
In Gross v. Teche Lines, 207 La. 354, 21 So.2d 378 (1945), this court discussed the duty encumbent upon common carriers of passengers, stating:
It is well settled that the driver of a motor vehicle is not negligent in failing to anticipate that another car operator, who is lawfully and prudently driving, will suddenly disregard the traffic laws and become reckless when there is nothing in his conduct to indicate he will do so. [Citations omitted]
* * * * * *
A carrier of passengers is liable for the slightest negligence which contributes to an accident that causes injury to a passenger but it is not an insurer of the passenger's safety against negligent acts of third parties and their palpable disregard of the law. The highest degree of care doctrine is not synonymous with a guarantee of the passenger's safety against any possible injury. Until there is some indication, which would require *484 a vigilant, competent, and experienced driver exercising the highest degree of care to observe the contemplated reckless and unlawful act of another, it is not negligence on his part to fail to do so. To hold otherwise would require the operator of a passenger vehicle to foresee every unexpected and sudden contingency. To place such an obligation on him would require him to speculate with mere possibilities and pure conjecture.
The case of Alphonse v. New Orleans Public Service, Inc., 138 So.2d 610 (La. App. 4th Cir. 1962) presented facts practically identical with those described by the bus driver in the instant case. In Alphonse, the trial judge, in concluding that defendant was negligent, stated:
Having seen the car on his left and parallel to the bus, the driver should have defensively anticipated the possible impatient and reckless `beat the bus' maneuver.
The Fourth Circuit Court of Appeal, in reversing the trial court's decision, held:
The effect of this conclusion is to make the carrier the absolute insurer of its passengers against any and all illegal conduct of other motorists, and require their drivers to be endowed with supernatural power to discern when and how every other motorist will violate traffic laws, notwithstanding every fact and circumstance would justify no such conclusion.
The law places on the common carrier only the burden of exculpating itself from any negligence of commission or omission which caused injury to a passenger. In this case defendant produced its driver, his instructor, and three passengers. All testified that the bus started on the green light, continued in the curb lane, did not `nose' into or enter the left lane, and had travelled 15 feet into the St. Bernard intersection, when it stopped suddenly to avoid striking the automobile making an unexpected right turn across its path.
* * * * * *
Since the defendant's driver was confronted by a sudden emergency, through no fault of his own, and was violating no rules of traffic at the time either as to position or speed, and was guilty of no negligent act of commission or omission, we are constrained to hold that the sudden stop was due solely and only to the negligence of the motorist who suddenly and illegally turned across its path to make a right turn.
The doctrine of sudden emergency is applicable to carriers of passengers for hire in the jurisprudence of this state. Walker v. New Orleans Public Service, Inc., 245 So.2d 763 (La.App. 4th Cir. 1971); Shannon v. Shreveport Transit Company, 149 So.2d 206 (La.App. 2d Cir. 1963); Johnson v. Shreveport Transit Company, 137 So.2d 463 (La.App. 2d Cir. 1962).
Even assuming the possible interpretation of Williams' testimony that the unknown vehicle came from the opposite direction, sped into the intersection in violation of a red light and cut across the immediate path of the bus, we stated in Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964):
The Court of Appeal, citing two of its own cases and Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, acknowledged that the rule is established in this State that a motorist travelling on a favored street, and, a fortiori, on a street controlled by electric semaphore lights, is entitled to assume that drivers on the less favored street, and particularly traffic facing a red light, will obey the law and respect his right-of-way. Indeed, it is now well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise *485 of the slightest sort of observation and care, that he will be found derelict.. . .
In the instant case, the facts are basically undisputed that the bus driver stopped at the transit stop, which is located some ten feet from the corner of the intersection. Mrs. Carter boarded the bus. The light changed to green. The bus driver proceeded forward slowly in a straight path. When he reached a point midway in the intersection, an unknown vehicle cut across into his path in violation of a red light. He slammed on his brakes and avoided the collision. It matters not whether the unknown vehicle came from the opposite direction and cut into his path (as a possible interpretation of Williams' testimony) or whether the vehicle came from his left and cut across his path (as testified to by the bus driver) because, in either case, it created a sudden emergency for which the bus driver was in no way responsible. We find no fault whatsoever on the part of Dunams for the accident which occurred. As a matter of fact, we find that his ability to stop in order to avoid the collision under these circumstances demonstrates the high degree of care exercised by him as he proceeded into the intersection. Thus, we conclude that defendant carrier has fulfilled its obligation of exculpating itself from negligence. It should be further noted that, although Mrs. Carter carried a bag of groceries in her left hand, a purse and umbrella in the other, and was apparently overweight, she was nevertheless described as a alert lady of about fifty years who walked normally. Her testimony indicated that she was an active golfer prior to the accident and in 1962 had won a golf championship at the New Orleans Golf Club. We recognize that an appellate court should not disturb the factual findings of the trial court in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). However, our review of the record convinces us that the trier of fact committed manifest error in the instant case, and the court of appeal properly applied the aforesaid principle to their appellate review in reversing the decision of the lower court.
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON and CALOGARO, JJ., dissent
TATE, J., dissents and assigns reasons.
TATE, Justice.
I respectfully dissent.
Conceding the duty of the defendant carrier to exculpate itself from its slightest negligence as the cause of its passenger's serious injuries, the majority nevertheless finds that the carrier has met that duty under the testimony of the plaintiff's witness, Williams. The majority finds that, by that testimony, the bus entered the wide intersection on a green light, only to have a car coming from the opposite direction enter on a red light and turn suddenly across the bus's path.
The majority concedes, however, that the bus driver would have been negligent if the oncoming car had entered on a green light. Then, the driver should have observed for traffic already in the intersection before proceeding forward when his light turned green.
I think the majority fell into error, as did the intermediate court, by accepting Williams's testimony that the car entered the intersection against a red light, when the evidence positively indicates that not Williams or any one of the bus could see the color of the traffic signals for opposite-bound traffic coming from the other side of the intersection. In making the facile assumption that Williams testified correctly about the red light, both the majority and the intermediate court were led into error by overlooking the significance of the testimony of Mr. William Lilly, the traffic signal supervisor for the city. His testimony concerned the computerized operation *486 of the traffic signals at the intersection.
The accident occurred at the intersection of Chef Menteur Highway and Desire Street. Chef Menteur was a six-lane highway, with (at the intersection) an additional left-turning lane for both inbound (to New Orleans) and outbound (away from New Orleans) traffic.
The traffic signals at the intersection included an additional left-turn arrow (green) to permit left-turning traffic to turn from Chef Menteur into Desire Street. The trial jury, which heard the full testimony, apparently took as significant (as I do) Lilly's testimony that, if a left-turning vehicle was in the left-turn lane, the signal did not change until the vehicle entered Desire Streetand, by this circumstance, delayed the change of the Chef Menteur red to green until the leftturning vehicle completed its exit from the left-turning lane.
Lilly's testimony shows the traffic-signal sequence at the intersection at the time of the accident was this:
The bus, outbound, was stopped on the City side of the Desire intersection, at the south curb, facing a red light. The driver, by his own testimony, was watching the traffic lights facing Desire Street, which were green, to become alerted to go forward when they turned yellow (for four seconds) to caution, then flicked red.
Normally, when the Desire Street signal flicked red, the Chef Menteur signal flicked green. (In fact, the bus driver testified that it did, and that he immediately proceeded forward.) However, when there was a left-turning vehicle in the leftturning lane on Chef Menteur, the Desire Street signal flicked red after the four-second yellow caution, but (as Lilly testified) the Chef Menteur signal stayed red until the left-turning vehicle completed its turn into Desire Street.
The uncontradicted testimony is that the bus driver, watching for the caution on the Desire Street signal to alert him, immediately proceeded forward at slow speed as this light turned green, but almost immediately jammed on his brakes to avoid striking the Chevrolet which passed in front of him headed riverward (southward) along Desire. (The passenger received her injuries because of this sudden stop, as she had not yet reached her seat, the third behind the driver.)
Under this evidence, I am unable to conclude that the trial jury committed error in finding that the carrier had not borne its burden of exculpating itself from the slightest negligence as the cause of its passenger's injuries. Especially considering the testimony of Lilly (which the majority does not mention, nor did the intermediate court), the jury could well have concluded:
(1) The bus driver was perhaps over-eager and started into the intersection as soon as the yellow caution for Desire snapped red (as he himself repeatedly testified), assuming (incorrectly, as it turned out) that the red on Chef Menteur had simultaneously changed to greenunaware that the left-turning vehicle in the opposite left-turning lane of Chef Menteur had, by its passage, delayed the change of the Chef menteur red facing him to green until the vehicle itself had turned into Desire headed across the bus's forward path; and
(2) The left-turning driver had entered the intersection on a green arrow, so that even under the ordinary-care standard the over-eager bus driver was negligent in not permitting the car to complete its passage of the intersection before starting forward.
Actually, the factual circumstances corroborate this as the explanation of what otherwise would be a freak accident:
The bus had barely gone into the intersection when the near-impact and sudden-braking occurred; the investigating police officer recalled that its rear portion was still at the curb, and that he had parked behind it. The bus driver himself repeatedly testified that he was watching *487 the Desire Street signal for it to turn yellow in order to alert himself to go forward when it then turned red. The actions of the vehicle coming from the opposite direction, which turned left across the bus's path on Chef Menteur as testified to by the observant but inarticulate Williams, become understandableinstead of a vehicle turning across three lanes of a heavily travelled main highway in the face of a red light, we find a vehicle which, on a left-turn arrow, entered the intersection just before the arrow changed.
To appellate judges, words may be selfsufficient and self-limiting as to facts described. To a trial judge, or to jurors drawn from a cross-section of the community and daily experiencing the traffic conditions of a living society, the full picture of what happened must be pieced out not only from the words, but from the demeanors and gestures and reticences[1] and implications of the live testimony of an entire trial. An inarticulate witness may properly be found credible by the trier of fact, and an articulate one unworthy of belief; although to the appellate judges, reading a cold record in the peace and quiet of their chambers, the articulate testimony may read truthful (simply because logical and grammatical) and the importance of the inarticulate may be overlooked (simply because its connotations are difficult to piece out in the absence of tone, gesture, and demeanor available in the live testimony).
There is evidence from which the jury could properly find a factual explanation of the evidence by which the carrier's negligence contributed to its passenger's injuries.
Such factual version, I might suggest, is much more probable than the actions of the hypothetical suicide-bent motorist of the appellate version, who (a) either sped up, overtook, and turned across just a foot or so in front of a moving bus or (b) else crossed three lanes of a heavily travelled thoroughfare in the face of a red light. Such a motorist courted immediate death anywhere except in the never-never land of a clever carrier defense which the trial jury, in its common sense, rejected as improbable.
For the reasons noted, therefore, I respectfully dissent.
NOTES
[1] The bus driver, for instance, did not get the names of the other passenger-witnesses on the bus.