GULOTTA, Judge.
Plaintiff appeals the dismissal of her suit against New Orleans Public Service, Inc. for injuries received when she was struck on the back of her head while a passenger on defendant’s bus. We affirm.
The incident here occurred when a noisy group of approximately sixty-five high school students boarded the Nashville Avenue bus at Freret Street in New Orleans. After the students boarded, the bus was crowded and people were standing in the aisles. Plaintiff, who frequently rode that bus line home from her teaching job, was seated on the first cross seat next to the beauty seat, by the window on the driver’s side. Suddenly she was struck on the back of the head. As a result of the incident, she claims to have suffered some minor physical problems and long-term emotional and psychological damage, e. g., loss of memory, fear of crowds, fear of going out into public.
It is plaintiff’s contention that a dangerous situation was created when the bus driver permitted overloading of the bus with loud, boisterous, and unruly high school students and that the bus driver was given notice of an earlier assault on another passenger in the rear of the bus and either ignored the warning or was prevented from hearing the warning because of the overcrowded bus. According to plaintiff, be *73 cause of the overcrowding of the bus and because of the bus driver’s failure to respond to a warning of impending danger, plaintiff suffered injury when struck on the head.
In Aime v. Hebert, 282 So.2d 566 (La. App. 4th Cir. 1973), we summarized the law applicable to this type of case:
“While not in the position of an insurer, a public carrier of passengers for hire is required to exercise the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. The mere showing of injury to a fare-paying passenger, and his failure to reach his destination safely, establishes a prima facie case of negligence. Such a carrier can be liable for assault by one passenger on another passenger where there is reason for the carrier employee to anticipate the assault and a failure on his part to take such action as may be practicable under the circumstances to prevent the assault from being committed or to interfere with its execution.” 282 So.2d at 568-569.
As this court quoted with approval in Alphonse v. New Orleans Public Service, Inc., 138 So.2d 610 (La.App. 4th Cir. 1962),
“Until there is some indication which would require a vigilant, competent, and experienced driver exercising the highest degree of care to observe the contemplated reckless and unlawful act of another, it is not negligence on his part to fail to do so. To hold otherwise would require the operator of a passenger vehicle to foresee every unexpected and sudden emergency. To place such an obligation on him would require him to speculate with mere possibilities and pure conjecture.” 138 So.2d at 613.
The testimony here shows that a crowd of students boarded the Nashville bus every day at the Freret stop; that the students were normally boisterous, laughing, yelling, and calling each other names; that the bus driver, the plaintiff, and another passenger who testified at trial, Melissa Sciortino, were accustomed to seeing these students and found nothing unusual about their behavior; that neither the bus driver, the plaintiff, nor Miss Sciortino had previously seen any violent incidents involving the students on the Nashville line. Although the testimony indicates there was another passenger, an “elderly black lady”, who may have witnessed the blow to plaintiff, the woman’s name was unknown and she did not testify. Moreover, there was no evidence to indicate that plaintiff was, in fact, struck by one of the rowdy students rather than by accident or by one of the passengers already on the bus when the students boarded it.[1]
Nor do we find merit to plaintiff’s contention that NOPSI was negligent in allowing overcrowding or overloading of its buses. Plaintiff failed to present evidence connecting conduct of the crowd on the bus with her injury. While we specifically do not pass on the effect overcrowding may have had on the injuries inflicted on other passengers, no showing has been made of a connection between the overcrowding and Josephine Imig’s injury. Although the bus driver testified the aisle of the bus was crowded with passengers up to the very front after the students boarded, and that he could not see to the back of the bus in the rear-view mirror because of the many passengers, this does not establish any un *74 usual behavior on the part of the student group that should have given the driver reason to anticipate an assault on our plaintiff, or that the overcrowding prevented the driver from observing conduct of passengers which jeopardized our plaintiff’s safety or prevented the driver from taking action to protect our plaintiff. See Higgins v. New Orleans Public Serv., Inc., 347 So.2d 944 (La.App. 4th Cir. 1977).
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. Miss Sciortino is involved in a separate law suit against the defendant bus company for harassment and battering she underwent from some of the students on the bus on that day. Her suit is not before the court on this appeal. Her testimony described what happened to her, and she did not see the blow to plaintiff. Both she and plaintiff related the attempts of the unidentified elderly black woman to make the driver stop the bus after the students began beating Miss Sciortino. The driver testified he had not heard the unidentified woman’s entreaties nor Miss Sciortino’s sobbing until after the students got off the bus at Claiborne Ave., only six or seven blocks from Freret Street (where the students boarded the bus.) Although it is not clear whether plaintiff was struck before or while Miss Sciortino was being attacked, the unidentified woman’s call to the driver occurred apparently after plaintiff was injured. Accordingly, we do not consider that evidence as relevant to plaintiff’s case.