400 So.2d 884 (1981)
Severino RODRIGUEZ, et al.
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 80-C-2881.
Supreme Court of Louisiana.
June 22, 1981.
*885 Floyd F. Greene, New Orleans, for defendant-applicant.
Ronald F. Plaisance, New Orleans, for plaintiff-respondent.
BLANCHE, Justice.
Rodolfo Rodriguez was injured during an altercation which occurred aboard a streetcar operated by New Orleans Public Service, Inc. (NOPSI). Rodolfo's father, individually and in behalf of his son, sued NOPSI for damages in the First City Court for the Parish of Orleans. That court rendered *886 judgment for plaintiff in the amount of $1300.75 and the Fourth Circuit Court of Appeal affirmed the judgment. This Court granted a writ of certiorari to consider the duty of the defendant to protect passengers from the intentional torts of other passengers. 396 So.2d 910.
The facts of this case have been accurately summed up by the court of appeal as follows:
Rodolfo Rodriguez, a 14-year-old white male, boarded a St. Charles Avenue streetcar at its intersection with Calhoun Street. He was accompanied by his young friend, Michael Hammer. Already on the streetcar were two young black females and at least two adults, referred to in the testimony as "tourists". Rodriguez and Hammer testified that shortly after they boarded the streetcar the two females commenced to make derogatory and insulting remarks toward them. They got up and moved a few seats away. The insulting epithets continued for approximately 20 blocks. At one point, Rodriguez and Hammer stated that the insults were so loud that the "tourists" turned and looked to their direction. Throughout this period of time the motorman on the streetcar, John Yancy, gave no indication that he was aware of the incidents taking place behind him.
As the streetcar reached the intersection of Carrollton and Oak Streets the two females arose to exit. As they passed young Rodriguez a large handbag of one of the females "slapped me across the face." Young Rodriguez reacted instantly by throwing up his arms and rising. In doing so, he knocked one of the females over and against one of the seats across the aisle. Immediately thereafter one of the females attacked Rodriguez with a seam ripper, inflicting superficial wounds on his lower left forearm, upper left arm, upper right arm and right chest. Yancy stopped the streetcar immediately and separated the youths. The females immediately left the scene. Rodriguez and Hammer got off the street car and went across the street to a local drug store to obtain first aid assistance.
After having received first aid assistance young Rodriguez and Hammer boarded another streetcar, and as they approached the end of the line they saw Yancy. Yancy then made inquiry concerning the extent of Rodriguez' injuries and called for a supervisor to investigate the matter.
Yancy's testimony is to the effect that he was totally unaware of any disturbance on his streetcar until the scuffling ensued. He did not hear the verbal abuse directed to the youths by the two females. He stated that he did not call his supervisor at Carrollton and Oak because he thought that a supervisor would be waiting at the Carrollton and Claiborne intersection. While he did admit to observing blood on Rodriguez' clothing and some blood on the seat of the streetcar, he still determined to wait until he reached the Carrollton and Claiborne intersection before reporting the incident.
There is testimony establishing that defendant's company rules require the operators of its vehicles to immediately report any incident involving personal injury. In this respect, Yancy should have called for supervisory assistance at the Carrollton and Oak intersection. It is also company policy that its operators should do everything reasonably within their power to avoid altercations that might result in injury to its fare-paying customers.
Plaintiff's contention is that the failure of the defendant's motorman to do anything between the time the female passengers began insulting Rodolfo and his companion and the time of the attack constituted a breach of defendant's duty of care. Given the factual posture of the case, we disagree.
In Gross v. Teche Lines, 207 La. 354, 21 So.2d 378 (1945), this Court approved a doctrine which states that a carrier of passengers is not an insurer of safety but, rather, is required to exercise the highest degree of care and is liable for the slightest negligence. This Court further stated that when a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault, i. e., that it acted *887 with the highest degree of care or that the accident did not occur. See also Galland v. New Orleans Public Service, Inc., 377 So.2d 84 (La.1979); Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963). The reason for the first rule is the notion that one who is in the business of providing transportation for a fee should be a more professional transporter than the "reasonably prudent" driver with respect to hazards associated with the transportation of passengers. In keeping with the reason for the rule, the courts of this state have consistently applied it in cases involving vehicular collisions involving public passenger carriers[1] or other injuries related to the operation of carriers' vehicles.[2]
More recently, the duty of highest care has been applied, with differing interpretations, to injuries arising from batteries inflicted upon passengers by trespassers or other passengers.[3] It is obvious however that injury resulting from a battery is totally unconnected with the hazards generally associated with transportation. Because of the lack of any connexity between transportation by public carriers and batteries upon passengers other than the location of the injuries, an application of the "highest care" standard to attacks committed on public carriers' vehicles would go beyond the reason for the rule and treat public carriers specially for all purposes rather than for those risks associated with the conducting of its business. Such a result cannot be sanctioned and is expressly disapproved.
Merely because the defendant will not be held to the highest degree of care to prevent intentional batteries upon its passengers does not mean that the law will absolve it from liability any time a passenger is attacked. Since defendant is essentially operating a business that permits the public to enter its premises, it should be held to the same duty as a reasonable business establishment with respect to hazards not associated with the peculiar nature of carriage of passengers.
Owners of businesses who permit the public to enter their establishments have a duty to exercise reasonable care to protect those who do enter. Ferrington v. McDaniel, 336 So.2d 796 (La.1976); Kavlich v. Kramer, 315 So.2d 282 (La.1975); Rigney v. Howard Bros. Discount Stores, Inc., 387 So.2d 38 (La.App. 3rd Cir. 1980); Martel v. South Farm Bureau Cas. Ins. Co., 368 So.2d 1192 (La.App. 3rd Cir. 1979). This duty extends to keeping the premises safe from unreasonable risks of harm or warning persons of known dangers. Williams v. Winn Dixie of La., Inc., 393 So.2d 680 (La.1981). When the independent, intentional tortious or criminal acts of a third person constitute the unreasonable risk, this duty does not require the proprietor to risk physical injury or civil or criminal liability by physical intervention. Rather, the duty can be discharged by the summoning of those entrusted by law with the power of immediately maintaining the peace, the police, at the time the proprietor knows or should reasonably know of the third person's intention and apparent ability to execute the intended acts. See Guidry v. Toups, 351 So.2d 1280 (La.App. 1st Cir. 1977), writ den. 353 So.2d 1036 (La.1978); Borne v. Bourg, 327 So.2d 607 (La.App. 4th Cir. 1976); Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir. 1973); Rodney v. Mansur, 219 So.2d *888 305 (La.App. 1st Cir. 1969).[4] In addition, the proprietor would have to, as far as is practicable under the circumstances, warn others of the danger prior to the arrival of the police so that they might take actions to avoid the danger. Anderson v. Clements, supra; see also Williams v. Winn Dixie of La., supra.
The undisputed testimony establishes that motorman Yancy did more for Rodolfo Rodriguez than the law required of him when he intervened in the scuffle seconds after it started and separated Rodolfo and the weapon-wielding assailant. In addition, Rodriguez procured his own medical attention. Thus, the only remaining question is whether Yancy should have reasonably anticipated the attack with sufficient time to prevent it.
The record is devoid of any testimony which would indicate that Yancy should have known that Rodriguez would be attacked. Even assuming that Yancy was aware that the assailant was uttering insulting words at Rodriguez and his companion, this alone could not suffice as reason for belief that a battery would occur, for, as Rodriguez put it, "[t]hat always usually goes on, all that kind of insulting stuff." Further, Rodriguez did not inform Yancy that he was in need of any assistance but instead changed seats to one in which he felt more comfortable just blocks before the attack.
In light of the evidence, viewed most favorably to the plaintiff, the worst that can be said about Yancy's actions is that he permitted a low level of decorum to continue on his streetcar. The tolerance of a set level of decorum not involving criminality or harm to others is a business choice that must be made by defendant based upon its calculations of what effect permitted conduct will have on ridership. See Brown v. New Orleans Public Service, Inc., 376 So.2d 176 (La.App. 4th Cir. 1979). Further, even if it could be said that the defendant had a duty to prevent another passenger from insulting Rodriguez, it would not extend to the risk of harm associated with a later attack on Rodriguez while the other passenger was preparing to exit, since it is impossible to state that failure to prevent noise is easily associated with a physical attack by the noisemaker upon the person of Rodriguez.
Since defendant did not breach any duty owed to plaintiff or his son, the judgment of the lower court is reversed.
REVERSED.
DIXON, C. J., concurs in the result only.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents and will assign reasons.
CALOGERO, Justice, dissenting.
I would affirm the judgment of the court below in favor of plaintiffs. As the majority states, the insulting remarks continued for approximately 20 blocks and were sufficiently disturbing to draw the attention of the "tourists." Under these circumstances, the Court of Appeal found that "for a distance of 15 to 20 blocks Yancy had every opportunity to discern the events taking place..." While the trial court did not state reasons for its judgment, a similar finding is inherent in its judgment for plaintiffs.
The injury did not occur on a crowded vehicle; nor was a large group of individuals involved in the attack. Apparently there were only six people on the streetcar during the time the incident took place. Under these circumstances it is not unreasonable to expect the motorman to be *889 aware that a potentially injurious situation is developing and instruct the offenders to cease their activity.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] The Gross and Wise cases involved vehicular collisions. See also Woods v. Hinton, 116 So.2d 208 (La.App. 2nd Cir. 1959).
[2] See Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.1975); Skipper v. New Orleans Public Service, Inc., 338 So.2d 771 (La. App. 4th Cir. 1976); Jones v. New Orleans Public Service, Inc., 254 So.2d 652 (La.App. 4th Cir. 1971), writ den. 260 La. 402, 256 So.2d 289 (1972).
[3] This was the approach taken by the Court of Appeal in the instant case, 400 So.2d 917 at 918 (4th Cir. 1981). See also Imig v. New Orleans Public Service, Inc., 391 So.2d 72 (La. App. 4th Cir. 1980); Orr v. New Orleans Public Service, Inc., 349 So.2d 417 (La.App. 4th Cir. 1977); Campo v. George, 347 So.2d 324 (La. App. 4th Cir. 1977); Vaughn v. New Orleans Public Service, Inc., 314 So.2d 545 (La.App. 4th Cir. 1975); Aime v. Hebert, 282 So.2d 566 (La. App. 4th Cir. 1973).
[4] As a practical matter, some of the lower courts have been using substantially the same approach involving intentional torts and criminal acts of third persons on public passenger carriers' vehicles notwithstanding their purported adherence to the "highest care" standard. Orr v. New Orleans Public Service, Inc., supra; Aime v. Hebert, supra. See also Brown v. New Orleans Public Service, Inc., 376 So.2d 176 (La.App. 4th Cir. 1979); Higgins v. New Orleans Public Service, Inc., 347 So.2d 944 (La. App. 4th Cir. 1977); Vaughn v. New Orleans Public Service, Inc., supra.