BARRY, Judge.
Robert J. Custer appeals the dismissal of his suit against New Orleans Steamboat Company for damages sustained when he was punched by an unknown assailant during a concert aboard its vessel, the S.S. President.
Custer and a group of friends boarded the President about 8:00 p.m. and proceeded to the crowded stage area. The boat left the dock around 10:00 and an hour later a man standing behind Custer pushed him. Custer claims he was pushed three or four times during the next hour and a half. When he turned and asked the man to stop he was punched in the nose and knocked to the floor. The man continued hitting him while on the floor, then disappeared into approximately 3,000 people.
After the boat docked Custer and his party disembarked and reported the incident to a security guard on the dock who administered first aid and suggested Custer go to a hospital.
X-rays revealed a comminuted fracture of Custer’s nasal bone which required subsequent hospitalization and surgery. The assailant was never identified.
Custer sued New Orleans Steamboat alleging it failed to provide proper security. He claims it was error for the trial court to rule that the boat owner had no duty to protect him against the tortious acts of a fellow passenger, especially when the assailant was unruly, drunk and menacing for more than an hour prior to the assault. Custer argues that the negligence (or lack) of the security guards was the proximate cause of his injury.
The issue is the duty owed by a pleasure boat owner to a fare paying passenger who is intentionally assaulted by another passenger, and whether the defendant met that standard.
Carriers by water, holding themselves out to the public as carriers of passengers, are ... common carriers of passengers. Semon v. Royal Indemnity Company, 279 F.2d 737 (5th Cir. La.1960). Another boat owned by the New Orleans Steamboat Company was determined to be a common carrier in Gallardo v. New Orleans Steamboat Company, 459 So.2d 1215 (La.App. 4th Cir.1984).
The duty owed by a common carrier to a passenger who is assaulted by another passenger is set forth in Pinkney v. Miller, 439 So.2d 1113 (La.App. 4th Cir.1983); writ denied 444 So.2d 117 (La.1984):
For years a common carrier has been saddled with the burden of exercising the “highest degree of care” and is liable for the slightest negligence. Gross v. Teche Lines, 207 La. 354, 21 So.2d 378 (1945). Additionally, if a fare-paying passenger was injured en route, the carrier bore the burden of exculpating itself from fault. This Court adopted the “highest care” standard to injuries inflicted on passengers by others. (footnote omitted) However, this line of jurisprudence has been expressly disapproved because of the lack of any connexity between transportation by public carriers and batteries upon passengers other than the location of the injuries. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981).
*1260 Our present standard of care for injuries wreaked on passengers by third parties was explained in Rodriguez:
Merely because the defendant will not be held to the highest degree of care to prevent intentional batteries upon its passengers does not mean that the law will absolve it from liability any time a passenger is attacked. Since defendant is essentially operating a business that permits the public to enter its premises, it should be held to the same duty as a reasonable business establishment with respect to hazards not associated with the peculiar nature of carriage of passengers.
Owners of businesses who permit the public to enter their establishments have a duty to exercise reasonable care to protect those who do enter.
Custer and two of his friends testified that the assailant harassed him for over an hour; however, he (and we assume his friends) neither moved nor sought help from the crew. Captain William Wilson testified that because of the large crowd, 49 crew members including several uniformed security guards patrolled the boat that evening. At least eight guards were stationed in the ballroom where the attack occurred. The crew was instructed to alert security if necessary.
The boat’s officers stated that passengers are visually screened before boarding and anyone intoxicated is not allowed aboard. Those who. become intoxicated later are carefully monitored. However, even assuming the assailant was intoxicated, common carriers which knowingly permit intoxicated passengers to ride are not ipso facto guilty of negligence. Pinkney v. Miller, supra.
The trial judge stated in his reasons: The testimony reflects that on the night in question there was no unusual occu-rence, other than the incident in question, during or after the concert and cruise in spite of the large attendance and the Mardi Gras atmosphere which attest to the defendant’s security and crowd control, which the court finds was adequate and reasonable under the circumstances. The Court is further of the opinion that this unfortunate incident, resulting in the serious injuries sustained by the plaintiff, was proximately caused by an unknown assailant, who should be cast in judgment, but who is not before the Court. The law and the evidence however exonerates [sic] the defendant from any liability, negligence or breach of duty in this matter, and judgment will be rendered accordingly.
We agree. The defendant exercised reasonable care to protect its passengers and to monitor problems. Custer complains that the assailant was a potential problem for over one hour, yet he didn’t report the alleged disturbance and obviously didn’t take it seriously. The defendant did not have the burden to anticipate this isolated and spontaneous incident, nor did it have a duty under the circumstances to protect the plaintiff beyond the measures taken.
The trial court is afforded great discretion and will not be reversed absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). We find no error.
The judgment is affirmed.
AFFIRMED.